OPINION *Page 2 
{¶ 1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary journal entry.
 {¶ 2} Plaintiff-appellant, Edward Luthman, dba Luthman Concrete (hereinafter "Luthman"), appeals the decision of the Auglaize County Court of Common Pleas granting summary judgment to Minster Supply Company (hereinafter "MSC"). For the reasons that follow, we affirm the trial court's judgment.
 {¶ 3} Luthman operated a business which poured and finished concrete. In 2003, Luthman went to MSC, a business that sells tools and accessories for masonry work, to look for products for decorative concrete. Luthman was shown a BonTool catalog by Ken Gigandet, the manager of MSC. Luthman then purchased a sealer called the Boss Gloss Clear Enhancer (hereinafter "Boss Gloss") from MSC.
 {¶ 4} On June 5, 2005, Luthman filed a complaint against Minster Supply Company, BonTool Co., and Shore Corporation[1] alleging that he applied Boss Gloss to decorative concrete at numerous residential homes and the Boss Gloss *Page 3 
turned an "unattractive yellow color." Luthman's complaint alleged the following causes of action against MSC: 1.) product's liability; 2.) negligence; 3.) negligent misrepresentation; 4.) breach of express warranties; 5.) breach of contract; 6.) breach of implied warranty of merchantability; and 7.) breach of implied warranty of fitness for a particular purpose.[2]
 {¶ 5} On July 24, 2006, MSC filed a motion for summary judgment on all the claims asserted by Luthman. On August 7, 2006, Luthman filed a memorandum in opposition to MSC's motion for summary judgment, and a cross-motion for partial summary judgment against MSC on liability with respect to the following claims: 1.) breach of express warranties; 2.) breach of contract; 3.) breach of implied warranty of merchantability; and 4.) breach of implied warranty of fitness for a particular purpose.
 {¶ 6} On November 28, 2006, the trial court granted MSC's motion for summary judgment.
 {¶ 7} It is from this judgment that Luthman appeals and asserts two assignments of error for our review. For clarity of analysis, we will combine Luthman's assignments of error. *Page 4 
 ASSIGNMENT OF ERROR NO. I The Trial Court Erred in Granting Summary Judgment in Favor of Defendant/Appellee Minster Supply Company and Dismissing the Claims Asserted by Plaintiff/Appellant Edward Luthman.
 ASSIGNMENT OF ERROR NO. II The Trial Court Erred in Denying Plaintiff/Appellant Edward Luthman dba Luthman Concrete's Motion for Partial Summary Judgment on Claims Asserted Against Defendant/Appellee Minster Supply Company
 {¶ 8} In his first assignment of error, Luthman argues the trial court erred in granting MSC's motion for summary judgment. Luthman argues that his claims, other than the claims specifically brought under the Product Liability Statute, are not asserted pursuant to R.C. 2307.71 to R.C.2307.80, and therefore, are not product liability claims. Luthman argues that the product liability act abrogates only common law productliability claims, and does not abrogate tort claims, contract claims, or statutory UCC claims. Luthman points to the Ohio Supreme Court's case ofCarrell v. Allied Products Corp. (1997), 78 Ohio St.3d 284,677 N.E. 2d 795, and argues that the Ohio Supreme Court found that causes of action can not be abrogated or superceded by implication. Luthman further argues that if the act abrogates all other causes of action then it is unconstitutional because it violates the contract clauses of the Ohio and United States Constitutions. *Page 5 
 {¶ 9} Luthman argues, in his second assignment of error, that by granting MSC's motion for summary judgment and dismissing his complaint, the trial court implicitly denied his motion for partial summary judgment against MSC. Luthman argues that the trial court erred in implicitly denying Luthman's motion for partial summary judgment as no material facts remain on his breach of contract, express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose claims, and the trial court should enter summary judgment in his favor as to liability on those aforementioned claims.
 {¶ 10} The trial court's grant of summary judgment is reviewed under a de novo standard. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243, citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate where: (1.) there is no genuine issue of material fact; (2.) the moving party is entitled to judgment as a matter of law; and (3.) reasonable minds could come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ. R. 56(C); Grafton, 77 Ohio St.3d at 105, citing State ex. rel. Cassels v. Dayton City School Dist. Bd. ofEdn. (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.
 {¶ 11} In Carrel, the Ohio Supreme Court held "the common-law action of negligent design survives the enactment of the Ohio Products Liability Act, R.C. *Page 6 2307.71 et. seq." 78 Ohio St.3d 284, at paragraph one of the syllabus. The Court stated, "[a]ccording to principles of statutory construction, the General Assembly will not be presumed to have intended to abrogate a common-law rule unless the language used in the statute clearly shows that intent." Id. at 287, citing State ex rel. Morris v. Sullivan
(1909), 81 Ohio St. 79, 90 N.E. 146, paragraph three of the syllabus.
 {¶ 12} In that case, the Court examined the language found in R.C.2307.71 and found that although the statutory definition of product liability claims used broad language, the "definition does not mention or otherwise discuss the common-law action of negligent design. More important, there is no explicit statement that this definition was meant to abolish common-law actions sounding in negligence." Id. at 287-88. The Court further stated, "`[t]here is no repeal of the common law by mere implication.'" Id. at 287, quoting Frantz v. Maher (1957),106 Ohio App. 465, 472, 7 O.O.2d 209, 213, 155 N.E.2d 471, 476. Thus, the Court held "the common-law action of negligent design survives the enactment of the Ohio Products Liability Act, R.C. 2307.71 et. seq." Id., at paragraph one of the syllabus.
 {¶ 13} R.C. 2307.71 has been amended since the Ohio Supreme Court's decision in Carrel was released. R.C. 2307.71 was amended by 2004 SB 80, effective 4-7-05 to include the following: "(B) Sections 2307.71 to2307.80 of the *Page 7 
Revised Code are intended to abrogate all common law product liabilitycauses of action." (Emphasis added). Accordingly, this court must first determine whether the amendment to R.C. 2307.71 applies in this case.
 {¶ 14} In the present case, Luthman first purchased the Boss Gloss Clear Enhancer in fall 2001 or spring 2002. (Luthman Depo. at 17). According to Luthman, he first found out about the problem with the Boss Gloss Clear Enhancer in the summer of 2003. (Luthman Depo., at 35). Luthman filed his complaint in the present action on June 6, 2005. Thus, Luthman's cause of action arose sometime in the summer of 2003.
 {¶ 15} Since the amendment to R.C. 2307.71 occurred after Luthman's cause of action arose, we will not use the amendment effective 4-7-05, but rather, will apply the statute that was effective when Luthman's cause of action arose. See Aldridge v. Reckart Equipment Company, 4th Dist. No. 04CA17, 2006-Ohio-4964, FN2. Since the amendment to R.C.2307.71 does not apply, Luthman's causes of action were not abrogated by the amendment to the Product's Liability Act.
 {¶ 16} Product liability claims are subject to the provisions in R.C.2307.71 to R.C. 2307.79. R.C. 2307.72(A). However,
 [a]ny recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to *Page 8 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code.
R.C. 2307.72(C), emphasis added.
 {¶ 17} Product liability claims are defined as:
 * * * a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
 (1) The design, formulation, production, construction, creation, assembly rebuilding, testing, or marketing of that product;
 (2) Any warning or instruction or lack of warning or instruction, associated with that product;
 (3) Any failure of that product to conform to any relevant representation or warranty.
R.C. 2307.71(M).
 {¶ 18} In his complaint, Luthman's causes of action against MSC included the following: product liability, negligence, negligent misrepresentation, breach of contract, breach of express warranties, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.
 {¶ 19} MSC is a supplier under the Product's Liability Act, which provides the following regarding a supplier's liability:
 (A) Subject to division (B) of this section, a supplier is subject to liability for compensatory damages based on a product liability *Page 9 claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies:
 (1) The supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages;
 (2) The product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.
R.C. 2307.78, emphasis added. The product's liability statute provides that the independent liability of a supplier is limited to the supplier's misrepresentation and the supplier's own negligence. Id.;Welch Sand Gravel Inc. v. OK Trojan, Inc. (1995),107 Ohio App.3d 218, 228-229, 668 N.E.2d 529, quoting O'Reilly and Cody, Ohio Products Liability Manual (1992), Sections 13.03, 13.04.
 {¶ 20} The applicable statute defines a representation as "an express representation of a material fact concerning the character, quality, or safety of a product." R.C. 2307.71(N). In order to maintain a cause of action based on a supplier's misrepresentation, "Ohio appellate courts have required some form of express conduct by the seller." Tekavec v.Van Waters Rogers, Inc., 12 F.Supp.2d 672, 680, citing Brown v.McDonald's Corp. (Loraine 1995), *Page 10 101 Ohio App.3d 294 at 302, Welch Sand Gravel, Inc. v. O K Trojan, Inc.
(1995), 107 Ohio App.3d 218, 228-229.
 {¶ 21} In his deposition, Luthman stated that he had been doing decorative concrete for about five years. (Luthman Depo. at 8). Luthman went to MSC and told Ken Gigandet that he was looking for a sealer for decorative concrete. (Id. 21). Gigandet opened a catalogue and told Luthman what they had. (Id. at 21-22). Gigandet went over the ad with Luthman, and the information that Gigandet provided was limited to the information in the ad. (Id. at 24). Luthman purchased the Boss Gloss in the fall of 2001 or Spring of 2002. (Id. at 17).
 {¶ 22} Luthman stated:
 * * * [Gigandet] did say there was another sealer you can use but not specifically for decorative concrete. Some people have used it in the past, but it's not recommended, so we did not use it, did not purchase it.
 Q. He was actually giving you an opinion or opinions about what you should be using?
 A. Yeah.
 Q. His recommendation was, you should use Boss Gloss?
 A. Yes.
(Id. at 68-69).
 {¶ 23} Further, Luthman stated in his deposition:
 Q. Aside from the words that are contained in that ad in Defendants' Exhibit B, did you rely upon any other representation in purchasing the product?
 A. Other than Minster Supply, no.
 Q. Other than Minster Supply, what do you mean? *Page 11 
 A. Just what Minster Supply had as far as information they had given me about it. As far as product, that is the only information I had ever gotten from them or got about the sealer.
 Q. Was the ad?
 A. Was the ad and from what Ken [Gigandet] said.
 Q. What did Ken [Gigandet] tell you?
 A. Going clear back, I don't know if he used the exact words from the ad or if he had any other knowledge that he had discussed at the time. I do not know.
 Q. Sitting here today, would you say that it was the ad that was the predominant representation that you relied on in purchasing the product?
 A. Yes.
 Q. As you sit here today, you don't remember any specific representation that Ken [Gigandet] made about the product that you relied upon?
 A. No, I don't.
(Id. at 25-26). The catalogue was issued by BonTool. (Id. at 22).
 {¶ 24} Luthman first found out about the problem with the BossGloss in the summer of 2003, when Ken Francis called and complained that the sealer turned yellow. (Id. at 34, 35).
 {¶ 25} Gigandet stated that he would not have recommended one concrete sealer over the other because he "wasn't real familiar with it." (Gagandet Depo, 23-24). Gigandet stated that there were some problems with other Bon Tool products like a few breakage of trowels and brick hammers, MSC packaged them and sent them back, and Bon Tool would replace them. (Id. at 36). Further, Gigandet stated in his deposition that MSC does not have any role in the manufacture or labeling of the product, and they do not modify the product or *Page 12 
change the label. (Id. at 38-39). According to Gigandet, the sealer had a yellowish tinge and the product did not perform as described in the catalogue. (Id. at 46; 51).
 {¶ 26} There is nothing in the record to indicate that the Boss Gloss Clear Enhancer did not conform to an express representation made byMSC. In his deposition, Luthman could not remember any specific representation made by Ken Gigandet, the manager at MSC. (Luthman Depo. at 25-26). In addition, Luthman indicated that the ad was the predominant representation that he relied on in purchasing the product, and the ad was located in a catalogue issued by Bon Tool. (Id. at 22).
 {¶ 27} Since there is no indication that MSC made any express representations, MSC cannot be held liable for an alleged misrepresentations under the product liability statute.
 {¶ 28} The elements of negligence are: "(1) the existence of a duty; (2) a breach of that duty; and (3) an injury resulting proximately therefrom." Tekavec, 12 F.Supp.2d at 681, citing Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 472 N.E.2d 267. "Under Ohio common law, negligence is established where a person has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such a defect." Id., citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 325, 364 N.E.2d 267. Moreover, "[a] *Page 13 
seller of a chattel manufactured by a third person who neither knows nor has reason to know that it is or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it." Id., citing Restatement (Second) of Torts § 402.
 {¶ 29} In the present case, it is undisputed that the Boss Gloss Clear Enhancer developed a yellowish tinge and did not perform as described in the catalogue. (Gigandet Depo. at 46; 51). However, MSC did not have any role in the manufacture or labeling of the product, and MSC did not modify the product or change the label. (Id. at 38-39). There is nothing in the record to indicate that MSC knew of any problems with the product prior to Luthman discovering the product, or that MSC had any reason to know of problems with the product.
 {¶ 30} Thus, MSC did not owe any duty to Luthman to inspect or test the product before it sold the product to Luthman. There is no evidence in the record that MSC breached any duties owed to Luthman. Accordingly, we find the trial court did not err in granting MSC summary judgment on that claim.
 {¶ 31} After reviewing the record, we find there is no genuine issue of material fact, that MSC is entitled to judgment on the product's liability claim as a matter of law, and reasonable minds can come to but one conclusion when viewing the evidence in favor of Luthman, and that conclusion is adverse to *Page 14 
Luthman. Accordingly, we find the trial court properly granted MSC summary judgment on the product's liability claim.
 {¶ 32} For the same reasons that we found MSC was not negligent under the Product Liability Act, we find that the trial court did not err in granting MSC's motion for summary judgment on Luthman's claim for negligence.
 {¶ 33} In addition, the negligent misrepresentation cause of action has the following elements:
 `One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'
Delman et. al v. City of Cleveland Heights et al (1989),41 Ohio St.3d 1, 4, 534 N.E.2d 835, (Emphasis removed), citations omitted.
 {¶ 34} As noted previously in our discussion of the Product Liability Act, MSC did not make any express representations about the Boss Gloss Clear Enhancer. In his deposition, Luthman stated that he does not remember any specific representations about the product on which he relied. (Luthman Depo. at 25-26). Further, MSC did not fail to exercise reasonable care in obtaining or communicating the information about the product to Luthman. MSC merely showed Luthman a Bon Tool catalogue, which contained a description of that *Page 15 
product. Thus, the trial court did not err in awarding MSC summary judgment on Luthman's negligent misrepresentation cause of action.
 {¶ 35} In addition, since MSC did not make any representations about Boss Gloss Clear Enhancer, MSC also did not make any express warranties regarding the product. Thus, the trial court did not err in granting MSC's motion for summary judgment on the express warranty causes of action.
 {¶ 36} Luthman also asserted a breach of contract claim in his complaint. (Luthman Complaint at ¶¶ 51-55).
 {¶ 37} There is no dispute that Luthman paid MSC money, and that MSC in return provided Luthman with the product. Thus, there are no genuine issues of material fact regarding whether MSC breached the contract. Accordingly, we find that the trial court did not err in granting MSC summary judgment on Luthman's breach of contract claims.
 {¶ 38} Finally, Luthman asserted claims for breach of implied warranty of fitness for a particular purpose and implied warranty of merchantability. (Id. at ¶¶ 56-67).
 {¶ 39} The Ohio Products Liability Act has preempted the warranty of merchantability and warranty of fitness for a particular purpose.Nadel v. Burger King Corporation (1997), 119 Ohio App.3d 578, 585,695 N.E.2d 1185, citations *Page 16 
omitted.[3] Under R.C. 2307.72(A), "`[a]ny recovery of compensatory damages based on a product liability claim' is subject to the Ohio Product's Liability Law." Id. at 585-586. As previously noted, the product liability act applicable at the time the cause of action arose, defined a product liability claim as:
 * * * a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
 (1) The design, formulation, production, construction, creation, assembly rebuilding, testing, or marketing of that product;
 (2) Any warning or instruction or lack of warning or instruction, associated with that product;
 (3) Any failure of that product to conform to any relevant representation or warranty.
R.C. 2307.71(M).
 {¶ 40} Luthman's claim is asserted in a civil action to recover for physical damage to property other than the product, which allegedly arose from the failure of the product to conform to a relevant representation or warranty. As noted, the Ohio Product Liability Act has preempted the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Nadel,119 Ohio App.3d at 585, citations omitted. Thus, we find that the trial court did not err in *Page 17 
granting MSC's motion for summary judgment on Luthman's implied warranty of merchantability and his implied warranty of fitness for a particular purpose causes of action.
 {¶ 41} Accordingly, we hold that the trial court did not err in granting MSC's motion for summary judgment. Since we have found that the trial court did not err in granting MSC's motion for summary judgment, we need not address Luthman's argument's that the trial court should have granted him partial summary judgment.
 {¶ 42} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 ROGERS and WILLAMOWSKI, JJ., concur.
[1] According to Luthman's complaint, Shore Corporation manufactured the Boss Gloss Clear Enhancer, and BonTool provided the labeling of the product and then sold the product to MSC. Luthman's claims against Shore Corporation and BonTool were subsequently settled and Shore Corporation and BonTool were dismissed with prejudice.
[2] Luthman also had a cause of action solely against BonTool and Shore Corp. for implied warranty in tort, and since BonTool and Shore Corp. have been dismissed as parties, we will not discuss that cause of action in this opinion.
[3] This court simply notes that the court in Nadel acknowledged that some of its rationale was brought into question by the Ohio Supreme Court's decision in Carrel, 78 Ohio St.3d 284. *Page 1