JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, Alan Jenisek ("Alan") and Judith Jenisek (collectively referred to as "appellants"), appeal from the trial court's order entered in favor of defendant-appellee, Highland Group, Inc. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand the lower court's decision.
 I. {¶ 2} According to the facts in the case sub judice, on March 13, 2000, Alan was injured when he attempted to drive equipment up a pair of plastic ramps that he purchased. The truck ramps were manufactured by Highland and known as the "Ramp Champ." The products at issue in this case were two adjustable ramps manufactured by defendant-appellee Highland Group Corporation (improperly named as Highland Group, Inc. in the complaint and notice of appeal). The ramps are made of a plastic-like substance known as structural foam.[1]
This was the first time Alan had used the Ramp Champ. Its basic components were relatively simple, consisting of two composite material telescoping ramps and a pin used to secure a telescoped ramp at a certain length. Warning labels were affixed to the sides of the ramps and written warnings were included in the packaging.
 {¶ 3} After purchasing the ramps, Alan proceeded to set up the ramps and drive up the ramps on powered equipment.[2]
The powered equipment consisted of a Kanga loader. The Kanga loader[3] is a type of multipurpose skid steer that is operated while standing on the loader.[4] Alan did not read the ramps' instructions;[5] however, he did secure theramps against the back of the pickup truck using nylon ties sothat they would not move away from the truck while it was beingloaded. After securing the ramps, he attempted to drive the Kanga up the ramps.
 {¶ 4} Each ramp of the Ramp Champ was expressly rated to carry 1,000 pounds, for a combined weight of 2,000 pounds. Appellants state in their brief that the combined weight of Alan and the Kanga was only 1,630 pounds. Unfortunately, the right ramp suddenly collapsed when Alan was loading the Kanga into the back of his pickup truck. Alan and the Kanga then fell several feet to the ground. Alan's leg was seriously injured in the fall.
 {¶ 5} As a result of the accident, Alan had surgery and spent six days in the hospital. After the surgery, Alan wore a plaster cast that extended from his groin all the way down to his toes.[6] The cast was set at a severe angle, bringing Alan's foot behind his torso. This was done in order to keep his quadriceps and hamstrings from retracting.[7] Alan wore the cast for six weeks and
 {¶ 6} later wore a polio brace on a full-time basis for approximately five or six months.[8] He experienced severe lifestyle changes due to the accident and still has significant problems with his knee. Alan was unable to work for quite a while after the accident.
 {¶ 7} According to the record, the appellants filed suit in the case on March 11, 2002. Ultimately, a jury trial commenced on September 5, 2003, and the jury returned a verdict in favor of the appellee. Plaintiffs-appellants now appeal the trial court's verdict.
 II. {¶ 8} Because of the fact that appellants' strongest argument involves their fifth assignment of error, we shall address that assignment of error first. Appellants' fifth assignment of error states the following: "The trial court committed reversible error by failing to grant plaintiffs-appellants' motion for summary judgment."
 {¶ 9} Our review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel.Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181,183.
 {¶ 10} Appellants argued that the warnings appellee provided were not adequate and provided expert opinion about the adequacy of the warnings in their summary judgment papers. Appellants' expert was unrebutted at the summary judgment stage and, therefore, there was no issue of fact for a jury to decide.
 {¶ 11} Appellee failed to rebut appellants' argument in summary judgment. Other than producing a copy of these warnings, appellee did not present any Civ.R. 56 evidence regarding the adequacy of the warnings. Instead, appellee argued in its summary judgment that the warnings were irrelevant because Alan did not read them. Appellee further argued that it had no duty to warn regarding any deflection of the ramps because deflection was open and obvious with respect to ramps in general.
 {¶ 12} Appellee's argument fails to address the fact that if the warnings were adequate, then Alan would have read them. Specifically, it is the inadequacy of the warnings themselves that caused the warnings to go unnoticed by Alan.
 {¶ 13} Under Ohio law, a warning is adequate if it reasonably discloses all inherent risks, and if the product is safe when used as directed. Crislip v. TCH Liquidating Co. (1990),52 Ohio St.3d 251; Seley v. G.D. Searle Co. (1981),67 Ohio St.2d 192. However, "an inadequate warning may make a product as unreasonably dangerous as no warning at all; * * *." Crislip,52 Ohio St.3d 251.
 {¶ 14} The fact finder may find a warning to be unreasonable, hence inadequate, in its factual content, its expression of the facts, or the method or form in which it is conveyed. The adequacy of such warnings is measured not only by what is stated, but also by the manner in which it is stated. A reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensitydemanded by the nature of the risk. A warning may be found to beunreasonable in that it was unduly delayed, reluctant in tone orlacking in a sense of urgency. Seley v. G.D. Searle Co.,67 Ohio St.2d 192.
 {¶ 15} In the case at bar, appellee's warnings were in very small print on the side of the ramps and in the instructions. The warnings were not highlighted in color, enlarged font or other attention-directing device.
 {¶ 16} In addition to the ramp warnings issue above, appellee's argument is flawed regarding the issue of driving the Kanga up the ramps. Even if appellee's arguments regarding ramp deflection were sufficient to convince the trial court that a genuine issue of fact existed regarding deflection, appellee did not apply its argument to the issue of driving up the ramps. Appellee simply attached the warning to its memorandum contra and declared that it was a matter for the jury to decide.
 {¶ 17} In the case at bar, we find that appellee needed to do more in establishing its summary judgment argument. The purpose of summary judgment is to determine if there is a genuine issue of material fact, and if there is, then summary judgment is inappropriate and the case proceeds to trial. However, if there is not an issue of material fact, then the trial court can simply apply the law to the material facts and enter judgment accordingly. It was incumbent upon appellee to present Civ.R. 56 evidence demonstrating a genuine issue of material fact regarding the issue of driving up the ramps. Despite having a number of expert witnesses to choose from, appellee did not present any such evidence to counter appellants' arguments. Therefore, based on the above, we find that appellee failed to demonstrate a genuine issue of material fact when it failed to offer opposing evidence creating an issue of fact. Appellants' motion for summary judgment should have been granted on the issue of the adequacy of the warnings regarding riding up the ramps. The sole issue for the jury to decide is appellants' damages.
 III. {¶ 18} Appellants' first assignment of error states the following: "The trial court committed reversible error by refusing to allow plaintiffs-appellants to introduce defendant-appellee's expert's testimony after the expert had been deposed, and by refusing to allow plaintiffs-appellants to comment upon defendant-appellee's decision not to introduce the contested expert testimony." Appellants' second assignment of error states the following: "The trial court committed reversible error by permitting defendant-appellee to ambush plaintiffs-appellants at trial with expert testimony that defendant-appellee unlawfully withheld despite plaintiffs-appellants' discovery requests and defendant-appellee's duty to seasonably [sic] supplement its expert evidence."
 {¶ 19} Appellants' third assignment of error states the following: "The trial court committed reversible error by permitting defendant-appellee to introduce inadmissible hearsay evidence in order to prove defendant-appellee's theory of how the injury-causing accident occurred."
 {¶ 20} Appellant's fourth assignment of error states the following: "The trial court committed reversible error by permitting defendant-appellee to introduce evidence to prove that plaintiffs-appellants were comparatively negligent as a defense to a strict liability products liability claim."
 {¶ 21} Based on our disposition of the fifth assignment of error, the issues raised in appellants' first four assignments of error are moot. App.R. 12(A)(1)(c).
 {¶ 22} This case is hereby reversed and remanded with instructions for the trial court to enter summary judgment in appellant's favor on the issue of the adequacy of the warnings and then to hold a trial on the issue of damages.
 {¶ 23} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee their costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., Concurs; McMonagle, J., Concurs inJudgment only.
[1] Tr. 654-55.
[2] Tr. 291-92, 298-300.
[3] The Kanga was a small, four-wheeled "skid steer" vehicle sold and used in Alan's lawn and garden business. It was used to haul materials or perform other related work. Skid steer vehicles employ a "hydrostatic transmission * * * that means unless the Kanga is running and the steering or locomotive levers are pushed either in the forward or rear direction, the wheels simply do not move." This type of skid steer design is ubiquitous in small loaders "like Bobcat loaders, front end loaders that are single-person, small-bucket type" and "zero turn radius" or "low turn radius" lawn mowers. Tr. 220-233.
[4] Tr. 220-221.
[5] Alan's deposition, p. 114.
[6] Tr. 265.
[7] Tr. 264.
[8] Tr. 275.