**BOYD et al., Appellants**

**v.**

**LINCOLN ELECTRIC CO. et al., Appellees.**

[Cite as *Boyd v. Lincoln Elec. Co.*, 179 Ohio App.3d 559, 2008-Ohio-6143.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90315.

Decided Nov. 26, 2008.

560

Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., John R. Climaco, Dawn M. Chmielewski, Jennifer L. Gardner, Lisa A. Gorshe, and John A. Peca; and Kelley & Ferraro, L.L.P., Anthony Gallucci, and Eric C. Wiedemer, for appellant Joseph Boyd.

Tucker Ellis & West L.L.P., Joseph L. Morford, Courtenay Youngblood Jalics, and Irene C. Keyse–Walker, for appellees Lincoln Electric Co. et al.

Seeley, Savidge, Ebert & Gourash Co., L.P.A., Robert D. Anderle, Daniel F. Gourash, Keith A. Savidge, and Matthew K. Seeley; and Stinson Morrison Hecker L.L.P. and Brian Williams, for appellee Deloro Stellite, L.P.

COLLEEN CONWAY COONEY, Presiding Judge.

{¶ 1} Plaintiff-appellant Joseph Boyd appeals the trial court's granting of summary judgment in favor of defendants-appellees, Lincoln Electric Co., Airco/BOC, the ESAB Group, Inc., Hobart Brothers Co., and Deloro Stellite, L.P. Finding some merit to the appeal, we affirm in part and reverse in part.

{¶ 2} Boyd was employed as a boilermaker welder from 1977 until 2004. During the span of his career, Boyd worked out of his union hall at jobsites for several different employers. His work generally consisted of welding together

tubes and panels on boilers. He worked with welding rods, welding wire, and other welding consumables on a daily basis. The appellees in this case are manufacturers of these welding consumables.

{¶ 3} Welding consumables contain manganese. Manganese is a naturally occurring element and is an essential ingredient for the proper manufacture of steel because it prevents steel from cracking and falling apart when it is manufactured. *Jones v. Lincoln Elec. Co.* (C.A.7, 1999), 188 F.3d 709, 715. The heat used in the welding process causes welding fumes when the welder fuses together the metal and the rod. Id. Consequently, the fumes generated by the burning of a mild steel welding rod contain manganese. Id. At the present time, "no one denies that manganese, although essential to human health in small amounts, is poisonous in large quantities." *Clendenin Bros. v. U.S. Fire Ins. Co.* (2006), 390 Md. 449, 889 A.2d 387, quoting Jean Hellwege, Welding Rod Litigations Heats Up; Workers Claim Toxic Fumes Cause Illness, 40 TRIAL Magazine (2004), 7, 14.

{¶ 4} In 1967, the manufacturers began placing a product label on welding-rod containers, stating that welding may produce a concentration of fumes and gases hazardous to one's health. The warning also cautioned users to avoid breathing the fumes and gases and to use proper ventilation. In 1979, the warning was updated and contained statements such as "fumes and gases can be dangerous to your health," "keep your head out of fumes," and "use enough ventilation * * * to keep fumes and gases from your breathing zone and the general area." In 1986, welding-rod manufacturers added a product sticker indicating that certain chemicals, including manganese, may be hazardous. The label was updated in 1991 as follows: "Warning, the following chemicals may be hazardous during welding: Iron, manganese, silicon, titanium dioxide. Lung and nervous system damage may result from overexposure." In 1997, 20 years after Boyd began welding, some manufacturers updated their labels to warn that overexposure to manganese could affect the central nervous system, resulting in irreversible impairment to speech and movement.

{¶ 5} Boyd began noticing hand tremors in 1999. He also experienced problems with his right arm "drawing up," left foot drop, sweating and panic attacks, and problems with his speech and memory. His symptoms slowly and gradually progressed and became worse. In 2004, Boyd was diagnosed with manganism, or manganese-induced parkinsonism. Later that year, he filed suit against appellees, seeking damages for injuries he alleged were incurred as a result of his occupational exposure to welding fumes and manganese.

{¶ 6} Even though the welding-rod containers contained warnings, Boyd testified at his deposition that he did not recall seeing any of the various warning labels. He explained that he did not have access to the containers because the

welding rods would be removed from their cartons and placed in a warming oven before he would use them. Boyd would take the welding rod from the warming oven and put it in a "thermos box" to keep it warm until he was ready to use the rod.

{¶ 7} The manufacturers also published Material Safety Data Sheets ("MSDS"), which contained more detailed safety information about their products. Boyd testified that he never saw any MSDSs that warned about the hazards of welding fumes. He also testified that he was never trained to keep his head out of welding fumes nor advised about any long-term effects of exposure to manganese compounds in welding fumes. He testified that the only potential hazards he recalled being warned about were "boiler flu" and skin rashes.

{¶ 8} The appellees moved for partial summary judgment. The trial court heard oral arguments over a three-day period in December 2006. In June 2007, the trial court granted the motion for summary judgment on counts three, four, five, six, and nine. The following month, the trial court also granted summary judgment on counts one, two, ten, and 11 of the complaint, which left only count 12, Boyd's claim against his employers for intentional tort, pending for trial.

{¶ 9} In granting summary judgment, the trial court found as follows:

In a failure to adequately warn claim, it is imperative that a plaintiff show that his reliance on the inadequate warning was the proximate cause of his injury. If a plaintiff is unable to do so, his claim fails. * * * [I]t is difficult for Plaintiff to make a failure to warn claim citing the inadequacy of the warnings when Plaintiff himself never saw or read the warnings. The fact that Plaintiff never saw or read the warnings is made even more important because Plaintiff testified that he would have abided by the warnings had he seen or read them. Thus, had he read the warnings, he would have modified his behavior and, perhaps, not suffered the alleged injury.

Defendants point to sufficient case law to demonstrate that when a plaintiff testifies that he or she did not read a warning label, proximate cause cannot be established and the claim must fail.

(Citations omitted.)

{¶ 10} Boyd filed a motion for reconsideration, or, in the alternative, to immediately "certify a Civ.R. 54(B) appeal" and to stay the September 2007 trial date. He requested that the trial court reconsider its finding as to counts one through six and nine through 11. The trial court denied Boyd's motion for reconsideration but granted the motion to certify a Civ.R. 54(B) appeal.

{¶ 11} Boyd filed his notice of appeal, raising two assignments of error for our review. In his notice of appeal, Boyd stated that he was appealing the trial court's granting of summary judgment and the court's denial of his motion for

reconsideration only on counts three through six and count nine. In other words, Boyd is appealing only the trial court's decision on his claims for negligence, negligence-sale of product, strict liability—misrepresentation, breach of express warranty, and aiding and abetting.[1]

{¶ 12} We initially determined that we did not have jurisdiction to review the instant appeal because the trial court failed to include the mandatory language required by Civ.R. 54(B) in its journal entry. Boyd filed a motion for reconsideration, informing this court that he had dismissed all the employer defendants from the lawsuit, so the count for employer intentional tort was no longer pending; thus, the trial court's granting of summary judgment disposed of all the pending claims. We granted the motion for reconsideration and will now reach the merits.

{¶ 13} In the first assignment of error, Boyd argues that the trial court erred in granting partial summary judgment by finding that his claims for failure-to-warn failed for lack of proximate cause.

## Legal Standards

{¶ 14} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, as follows:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

{¶ 15} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts

---

1. Boyd voluntarily dismissed Airco/BOC from counts three through six prior to the trial court's granting of partial summary judgment.

must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 16} Boyd bases his products-liability claims on theories of both strict liability and negligence. In general, manufacturers of defective products may be held strictly liable under the Ohio Products Liability Act (R.C. 2307.71 through 2307.80). The Ohio Products Liability Act, however, has not abrogated the common law applicable to products-liability claims. In other words, common-law products-liability actions grounded in negligence, such as the negligent failure-to-warn claims in this case, survive enactment of the Ohio Products Liability Act. See *Carrel v. Allied Prods. Corp.* (1997), 78 Ohio St.3d 284, 286–290, 677 N.E.2d 795; *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177 (holding that plaintiffs may plead both negligence and strict liability for failure to warn).

{¶ 17} To recover compensatory damages under the Ohio Products Liability Act, Boyd must establish by a preponderance of the evidence that the manufacturers' welding rods were defective in some respect and that the defect was the proximate cause of his injuries. R.C. 2307.73(A). To prevail on a negligence claim, Boyd must demonstrate the traditional negligence elements of duty, breach, causation, and injury. *Hanlon v. Lane* (1994), 98 Ohio App.3d 148, 648 N.E.2d 26, 28; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614; see also *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313.

## Manufacturers' Duty to Warn

{¶ 18} Under Ohio law, it is not necessary that a manufacturer appreciate the specific nature of the hazard posed by the product to create the duty to warn; rather, to trigger the duty to warn, it is sufficient that the manufacturer have only some general awareness of the risk. *Runyon v. Briggs & Stratton Corp.* (May 5, 1989), Montgomery App. Nos. 10987 and 11185, 1989 WL 49475. As a supplier of welding consumables, the manufacturer had an obligation to be an expert in its product, which includes the testing and monitoring of known and possible hazards relating to its products. See *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831 (holding that a warning is adequate when, under all the circumstances, it reasonably discloses all risks inherent in the use of a product of which the manufacturer, being held to the standards of an expert in the field, knew or should have known to exist).

{¶ 19} Boyd's claims are premised on the assertion that the appellees breached their duty by failing to properly warn him of the dangers in their welding rods and the fumes emitted when using the rods. In *Crislip*, 52 Ohio St.3d 251, 556

N.E.2d 1177, the Ohio Supreme Court set forth a manufacturer's duty in the context of a failure-to-warn claim premised on either negligence or strict liability. The court, employing Sections 388 and 402A of Restatement of the Law 2d, Torts (1965), at 300–301 and 347, held that "[i]n a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it [can] be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." *Crislip* at 257, 556 N.E.2d 1177.

{¶ 20} Comment g to Section 388 explains that the duty can be discharged if the manufacturer exercises "reasonable care to give to those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used." Id.; *Freas v. Prater Constr. Corp.* (1991), 60 Ohio St.3d 6, 8, 573 N.E.2d 27. Likewise, Comment j to Section 402A refers to failure to warn and adds that:

{¶ 21} "In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. * * * Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Id.

{¶ 22} Regarding defects due to inadequate warning, R.C. 2307.76, states:

(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

{¶ 23} Other courts have found that the manufacturers of welding rods had a duty to warn welders about the hazards associated with welding-rod fumes. See

*Tamraz v. BOC Group Inc.* (July 18, 2008), N.D.Ohio No. 1:04–CV–18948, 2008 WL 2796726 (finding substantial evidence that excessive exposure to manganese can cause manganese-induced parkinsonism); *Elam v. Lincoln Elec. Co.* (2005), 362 Ill.App.3d 884, 299 Ill.Dec. 305, 841 N.E.2d 1037 (noting that the record is replete with articles, scientific papers, and testimony showing a correlation between welding and parkinsonism).

### Manufacturers' Breach of Duty to Warn

{¶ 24} Again, in order to recover compensatory damages for a strict products-liability claim based on a warning defect, Boyd must establish that the manufacturers' welding rods were "defective due to inadequate warning or instruction" and that this defect was the proximate cause of his injuries. R.C. 2307.73(A). Similarly, for a negligent failure-to-warn claim, Boyd "must show that the manufacturer had a duty to warn, that the duty was breached, and that [his injuries] proximately resulted from that breach of duty." *Hanlon,* 98 Ohio App.3d 148, 648 N.E.2d 26.

{¶ 25} We note that the trial court did not consider the first prong, whether there was a warning defect in the welding rods, and instead focused solely on proximate cause in granting summary judgment. Likewise, the appellees propose that the adequacy of the warnings provided "is not material to the dispositive question of whether Boyd presented sufficient evidence to withstand summary judgment on the issue of proximate cause." We disagree. Although the issue of a warning defect did not form the basis of the trial court's summary-judgment order, the existence of a warning defect is at issue in this appeal. We review the trial court's decision de novo. Thus, we are not concerned only with the trial court's reasoning supporting its decision, but also with whether Boyd set forth sufficient evidence on each element of his claims. Thus, we will consider first whether there was a warning defect in the welding rods, and second whether such a warning defect proximately caused Boyd's injuries.

### Inadequate Warning

{¶ 26} For the following reasons, we find that sufficient evidence has been introduced creating genuine issues of material fact whether the manufacturers' warnings were inadequate.

{¶ 27} There is no dispute that during the time period Boyd was employed as a welder, the appellees packaged their welding rods in containers or boxes containing various warnings. The mere fact, however, that there was a warning accompanying a product does not relieve a manufacturer of liability.

{¶ 28} A warning is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed. *Crislip,* 52 Ohio St.3d at 255, 556 N.E.2d 1177; *Seley,* 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831, at paragraph two of the syllabus; *Phan v. Presrite Corp.* (1994), 100 Ohio App.3d 195, 200, 653 N.E.2d 708. But a warning can be defective and/or inadequate based on its content or the manner in which the warning is communicated. In *Seley,* the Ohio Supreme Court stated:

> The fact finder may find a warning to be unreasonable, hence inadequate, in its factual content, its expression of the facts, or the method or form in which it is conveyed. The adequacy of such warnings is measured not only by what is stated, but also by the manner in which it is stated. A reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensity demanded by the nature of the risk. A warning may be found to be unreasonable in that it was unduly delayed, reluctant in tone or lacking in a sense of urgency.

Id. at 198, 21 O.O.3d 121, 423 N.E.2d 831.

{¶ 29} Thus, "[t]he mere presence of * * * warnings that, if followed, may have been adequate does not eliminate the fact that a jury could find the existing warnings inadequate based on their form, manner of expression, or lack of exigency." *Hisrich v. Volvo Cars of N. Am., Inc.* (C.A.6, 2000), 226 F.3d 445, 453, citing *Seley.* In fact, "[a]n inadequate warning may make a product as unreasonably dangerous as no warning at all." *Crislip,* 52 Ohio St.3d at 256, 556 N.E.2d 1177.

{¶ 30} This court must consider not only the actual warning, but the method of delivery of the warning. First, as to the content of the warnings, it is undisputed that none of the warnings on the welding-rod containers warned consumers of the dangers of overexposure to manganese fumes before 1997. Thus, even if Boyd had the opportunity to observe and read the warning labels, the labels would not have provided him with any warning that exposure to manganese in welding fumes could cause injury to his central nervous system. It is also undisputed that the actual welding consumables did not contain a warning. Rather, the warning was placed on the bottom of welding-rod containers, was written in small print, and was often not seen by the welders who used the rods.

{¶ 31} Boyd's expert, Robert Cunitz, opined that the manufacturers' warnings were inadequate. In 1977, when Boyd began his welding career, the warnings used the word "caution" as the initial word in the warning. Cunitz opined that only the initial word "danger" would be an appropriate word to warn of hazards involved in welding fumes. Although the warnings were later updated to state "warning" as the initial word, Cunitz suggested that the words "manganese poisoning" or "poisonous fumes" should have been used to apprise a welder of

any danger associated with welding fumes. Further, the warnings, although stating that adequate ventilation should be used, did not define "adequate ventilation" or otherwise explain what level should be considered dangerous. Additionally, there were no instructions on how to avoid breathing fumes or how to keep one's head or breathing zone out of the fumes.

{¶ 32} As to the method of delivery of the warning, the evidence demonstrated that the warnings were found only on the containers in which the welding rods were packaged and in the MSDSs. Boyd testified at his deposition that it was common practice for welders to never come in contact with the containers because they would not see a welding rod until after it had been removed from its packaging and placed in a warming oven. Craig Robinson, safety manager at one of Boyd's employers, admitted during his deposition that the welders would not usually see the containers the welding consumables came in. In addition, Boyd submitted a 1967 memorandum by Lincoln Electric's chief engineer indicating that the company would put warnings only on the containers, not on the product itself, and acknowledged that many welders using the consumables would never see the warning labels.

{¶ 33} In *Ruth v. A.O. Smith Corp.* (Feb. 27, 2006), N.D. Ohio No. 1:04–CV–18912, 2006 WL 530388, the court, in deciding another manganese case and discussing the same MSDSs at issue in this case, found that a jury could reasonably conclude that:

(1) the MSDSs do not "communicate sufficient information" that the danger of exposure to manganese comes from exposure to welding fumes, and not just the welding rod itself; (2) the warnings do not explain that welding fumes contain a substantially higher percentage of manganese than do the welding rods; (3) the warning to "use enough ventilation * * * to keep fumes and gases from your breathing zone" does not "communicate sufficient information" to inform a welder how to use the welding rod safely, because "enough ventilation" is not defined; (4) the warnings did not sufficiently communicate the level and extent of the danger of inhaling welding fumes; (5) the warnings' use of a reference to a separate document—the MSDSs—did not serve as a sufficient mechanism to adequately and actually give notice to the intended warning recipient; and/or (5) the warnings given were inadequate in light of the defendants' history of having earlier provided welders with what a jury could conclude were grossly inadequate and possibly even misleading warnings.

Id. at *2.

{¶ 34} Until the late 1990s, the manufacturers' warning labels in the instant case make no mention of manganese or the possibility of neurological injury. Nor do the MSDSs mention the possibility of neurological injury during the majority of Boyd's career. Thus, during the first 20 years of Boyd's career, even

if he had had the reasonable opportunity to see and read a warning label, the labels would not have provided him any warning that exposure to manganese in welding fumes could cause him to suffer serious and irreversible injuries.

{¶ 35} We find that there was sufficient evidence before the court from which a jury could find that the appellee manufacturers breached their duty to provide the warning that a manufacturer exercising reasonable care would have provided concerning the risk of welding fumes. See R.C. 2307.76(A)(1)(b). Thus, we find that Boyd set forth sufficient evidence to withstand summary judgment as to the second prong, whether the manufacturers' warnings were inadequate, and, therefore, they breached their duty to him.

### Causation

{¶ 36} The third prong requires Boyd to show that the manufacturers' defective products were the proximate cause of his injuries. The trial court opined that Boyd could not show that his reliance on the inadequate warning was the proximate cause of his injuries, because he never read the warning labels on the containers of welding rods.

{¶ 37} Although proximate cause is often a jury question, summary judgment is proper on this issue when a plaintiff has failed to meet his burden to produce evidence to challenge unfavorable evidence already in the record. See *Phan*, 100 Ohio App.3d at 201, 653 N.E.2d 708. We find that Boyd has produced sufficient evidence to successfully challenge the "unfavorable" fact that he did not read the warnings on the welding rod containers or in the MSDSs.

{¶ 38} In Ohio, there is a presumption that an adequate warning, if given, will be read and heeded. This is known as the "read and heed" rule. If an inadequate warning is given, however, a rebuttable presumption arises that the failure to adequately warn was a proximate cause of the plaintiff's injuries. *Seley*, 67 Ohio St.2d at 200, 21 O.O.3d 121, 423 N.E.2d 831. Appellees argued that this presumption was rebutted by Boyd because he admitted that he did not read the warnings. We find that the trial court and appellees improperly extended the "read and heed" rule to mean that if a plaintiff admits he or she did not read any warning accompanying a product, then a defendant has per se rebutted the presumption.

{¶ 39} The fact that Boyd did not read the warnings on the welding rod containers is undisputed; however, that is not where our analysis ends. Instead, we find that if the display of warnings is inadequate, the failure to read the warnings does not always absolve a manufacturer of liability. "Rather, a warning that is inadequate because it is not properly displayed can be the proximate cause

of harm even if the user did not read the warning." *McConnell v. Cosco, Inc.* (S.D.Ohio 2003), 238 F.Supp.2d 970, 978.

{¶ 40} To support their position, the manufacturers rely on cases that hold that when a plaintiff admits he or she did not read a warning label, proximate cause cannot be established, and the claim fails. Each of these cases is distinguishable from the case at bar.

{¶ 41} In *Freas,* 60 Ohio St.3d 6, 573 N.E.2d 27, the Ohio Supreme Court affirmed summary judgment in favor of the manufacturer when the plaintiff's decedent was killed while disassembling a crane. In *Freas,* however, the court found that the warnings in the instruction manual were adequate and that the decedent had read and understood the instructions. Moreover, the *Freas* court limited its holding to the specific facts of that case and specifically stated that their holding "should not be construed to stand for the proposition that warnings set forth in an instructional manual will, in all situations, be sufficient to absolve a manufacturer of liability. * * * [There will be] many situations that require a manufacturer to supply warnings on the product itself * * *."

{¶ 42} In *Phan,* 100 Ohio App.3d 195, 653 N.E.2d 708, this court found that a warning on the foot switch of a power press was adequate because it was seen by employees who operated the press and because there was no other place to put such a warning where employees would have read it. We also found that the plaintiff's injury would not have occurred if he had followed the warning label. Id. Similarly, in *Mohney v. USA Hockey, Inc.* (N.D.Ohio 2004), 300 F.Supp.2d 556, the court found that the warning was adequate because the warning on the helmet provided information regarding the very risk the plaintiffs asserted was associated with the head-protection system. In addition, the court found that the warning label was in plain view, and the plaintiff saw the label hundreds of times but never read it.

{¶ 43} Appellees also rely on *Mitten v. Spartan Wholesalers, Inc.* (Aug. 16, 1989), Summit App. No. 13891, 1989 WL 95259, which held that proximate cause could not be established because the plaintiffs either did not see or did not read the warning. We do not find that court's reasoning persuasive for the instant case.

{¶ 44} Thus, the cases cited by the appellees are distinguishable because the courts found that the warnings were adequate. In the case at bar, it is not that Boyd chose not to *read* the warnings, but that he did not ever *see* the warnings due to the manufacturers' placement of the warnings on the containers of welding rods. And it appears from the evidence in the record that the manufacturers had at least some knowledge that the welders usually did not see the containers, and thus would not see the warnings. See *Elam,* 362 Ill.App.3d 884, 299 Ill.Dec. 305, 841 N.E.2d 1037 (finding that the evidence showed that welders seldom saw the

cartons because the rods had been removed from the cartons by the time the welders used them). Moreover, Boyd is not only challenging the method of communicating the warnings, he is also challenging the actual content of the warnings.

{¶ 45} Boyd testified at his deposition that if he had been properly warned, he would have taken the steps necessary to protect himself. He testified that he tried to always weld safely, would have worn the best respirator available, and always wore whatever safety equipment was supplied to him by his employers. One of Boyd's employers, Franklin Cogar, owner of F & B Steel Company, testified at deposition that Boyd was a "go-getter," a good welder, and a safe welder who adhered to safety procedures.

{¶ 46} The appellees argue that Boyd was told to read the MSDS and failed to do so; thus, his claims must fail. We disagree. Although Boyd admitted that he did not read the MSDS while working for one employer from 2001 to 2004, he did not testify at deposition that he never read an MSDS during his 27–year career. Cunitz also opined that the manufacturers' MSDSs were too technical and not easily understood by welders. Moreover, as already discussed, the manufacturers' MSDS bulletins did not warn of the dangers of overexposure to manganese until the late 1980s. Most important, the evidence shows that even though some manufacturers added manganese-specific cautions to their MSDSs, the warnings remained inadequate because the manufacturers did not place these cautions on the warning labels themselves. See *Tamraz*, 2008 WL 2796726, at *23.

{¶ 47} We also find that the appellees have not so far produced evidence regarding the year that any of Boyd's employers would have first received an MSDS disclosing the risk of neurological injury due to manganese exposure from welding fumes or that the employers properly communicated the warnings to their employees. Whether Boyd actually saw, could have read, or could reasonably have been expected to read and comprehend any warnings in the MSDSs is an issue of fact for the jury.

{¶ 48} We agree with Boyd that this case is more akin to the holding in *McConnell*, 238 F.Supp.2d 970, where the court applied Ohio law to deny summary judgment to a manufacturer of highchairs based on inadequate warnings. The plaintiff alleged that inadequate warnings on a highchair led to a child's permanent injuries. The court held that a warning that is inadequate because it is not properly displayed can be the proximate cause of harm even if the user did not read the warning. Id. "Were the law otherwise, manufacturers would be free from liability for providing any warning no matter how obscure, but would be encouraged to use obscure warnings so that consumers would still use their product despite its risks." Id. at 979–980.

{¶ 49} In *Tamraz*, 2008 WL 2796726, a case that is part of the federal multidistrict litigation regarding manganese welding fumes, the court similarly held that a plaintiff may prevail on failure-to-warn claims even if he did not read the warning label that accompanied the product he used. The court found that if a plaintiff asserts that part of the reason he did not read a warning is that the defendants purposely made the label hard to find and read, through its placement and size, then he is not precluded from pursuing his failure-to-warn claim. Id. Thus, although the *Tamraz* court found it important under the facts of that case that the plaintiff had seen the warnings, it also held that it was not necessary for him to see the warnings to set forth a failure-to-warn claim.

{¶ 50} In *Jenisek v. Highland Group, Inc.*, Cuyahoga App. No. 83569, 2004–Ohio–4910, 2004 WL 2071385, the plaintiff sued the manufacturer of a truck ramp after he was injured when the ramp collapsed. The trial court granted summary judgment in favor of the manufacturer, and we reversed, holding in part that it was the inadequacy of the warnings that caused the plaintiff to not read them, and his claims were not barred by his failure to read the warning.

{¶ 51} Unlike the cases cited by the trial court and appellees, the facts of the instant case could lead a reasonable jury to conclude that both the content of the warnings and the manner in which they were communicated were inadequate to warn Boyd about the risk of neurological injury due to exposure to manganese in welding fumes. Boyd could not read a warning he could not see. And even if he could have seen it, Boyd set forth sufficient evidence that the wording of the warnings was inadequate. Since Boyd offered evidence that if the warning was available and adequate he would have read it and modified his behavior, the failure to adequately warn may be found to have proximately caused his injuries. At the very least, determining the adequacy of the warnings on the welding-rod containers creates a genuine issue of material fact; thus, we find that Boyd is entitled to have a jury determine whether the inadequacy of the manufacturers' warnings was the proximate cause of his injuries.

{¶ 52} Therefore, based on the facts presented, we hold that a warning that is inadequate in manner, content, form, or communication can be the proximate cause of harm, even if the user did not read the warning.

### Learned Intermediary Doctrine

{¶ 53} Lastly, we will briefly discuss the defense of the sophisticated purchaser, or the learned-intermediary doctrine. Even though Lincoln Electric, ESAB, and Hobart argue in their appellate brief only that Boyd's claims fail on the grounds that he did not read the warnings on the welding rod containers, they initially moved for summary judgment on that basis as well as the alternative theory that the learned-intermediary doctrine applies. Since we review the trial

court's decision de novo, and because Deloro Stellite raises the argument in its appellate brief, we will also address this argument as to all appellees.

■■■ {¶ 54} In *Vaccariello v. Smith & Nephew Richards, Inc.* (2002), 94 Ohio St.3d 380, 763 N.E.2d 160, the Ohio Supreme Court held that "[t]he learned intermediary doctrine does not relieve the manufacturer of liability to the ultimate user for an inadequate or misleading warning; it only provides that the warning reaches the ultimate user through the learned intermediary." Thus, a manufacturer's duty can be discharged only upon providing a learned intermediary with an adequate warning. Since we have concluded that there is sufficient evidence for a jury to decide whether the warnings were inadequate, it would be premature for us to determine whether the manufacturers may use the learned-intermediary doctrine as a defense. That doctrine is better left for consideration as a potential jury instruction at trial.

{¶ 55} Therefore, we find that the trial court erred in granting summary judgment as to counts three, four, and five, and we, therefore, reverse the judgment and remand the case for trial.

### Warranty

{¶ 56} Count six of Boyd's complaint alleged that the manufacturers expressly warranted that welding products were safe, which proved to be false, and that their conduct was a producing or proximate cause of his injuries.

{¶ 57} We note that Boyd does not address the court's granting of summary judgment as to this claim in his appellate brief. Nor can we find any support for this claim in the record. Thus, in accordance with App.R. 12 and 16, we need not address this argument, which Boyd has not raised.

{¶ 58} Therefore, we affirm the trial court's granting of summary judgment as to this claim.

### Aiding and Abetting

{¶ 59} Count nine of Boyd's complaint alleged that the manufacturers aided and abetted one another in tortiously failing to warn him of the health hazards of exposure to manganese fumes in their welding products.

{¶ 60} Boyd brings this claim under Section 876(b) of the Restatement of Law 2d, Torts (1979), which is titled "Persons Acting in Concert" and states:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, * * *.

{¶ 61} According to App.R. 12(A)(2), we may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). The appellant must include in his brief "an argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A).

{¶ 62} As with his claim for breach of warranty, we find that Boyd has essentially abandoned this claim on appeal. Although it was argued separately in the lower court, Boyd fails to make any argument on appeal as to how the manufacturers allegedly acted in concert and aided and abetted one another in their tortious failure to warn him. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *State v. Anderson,* Cuyahoga App. No. 87828, 2007–Ohio–5068, 2007 WL 2793351. Therefore, we decline to address Boyd's argument that the trial court erred in granting summary judgment on his aiding-and-abetting claim.

{¶ 63} The first assignment of error is sustained as to counts three, four, and five and overruled as to counts six and nine.

## Motion for Reconsideration

{¶ 64} In the second assignment of error, Boyd argues that the trial court erred in denying his motion for reconsideration based on newly discovered evidence as to counts three through six.

{¶ 65} Pursuant to Civ.R. 54(B), a trial court's order or decision is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Accordingly, an interlocutory order, such as a partial granting of summary judgment, is subject to a motion for reconsideration. *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105.

{¶ 66} An appellate court reviews a trial court's decision regarding a motion to reconsider the trial court's previous interlocutory order under an abuse-of-discretion standard. *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 535, 706 N.E.2d 825. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 67} Since we sustained Boyd's first assignment of error as to counts three, four, and five, we need not address whether the trial court erred in denying his motion for reconsideration on these counts because the issue is now moot. As to Boyd's motion for reconsideration on count six, his claim for breach of warranty, we do not find that the trial court abused its discretion. None of Boyd's "newly discovered facts," which in this case arose from 29 depositions from which Boyd attempted to file excerpts with his motion, deal with Boyd's claim for breach of warranty.[2]

{¶ 68} Therefore, the second assignment of error is overruled.

{¶ 69} Accordingly, the trial court's granting of summary judgment is affirmed as to the claims for breach of express warranty (count 6) and aiding and abetting (count 9) and reversed as to the claims for negligence and strict liability (counts 3, 4, and 5). The case is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

KILBANE and CELEBREZZE, JJ., concur.

---

2. We need not review whether the depositions were properly filed or should have been considered by the trial court.