[Cite as *Estate of Blandford v. A.O. Smith Corp.*, 2016-Ohio-2835.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   103030

---

# ESTATE OF IAN W. BLANDFORD, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# A.O. SMITH CORPORATION, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818711

**BEFORE:** Boyle, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 5, 2016

**ATTORNEYS FOR APPELLANTS**

Anthony Gallucci
Brian R. Herberth
William D. Mason
Kelley & Ferraro, L.L.P.
127 Public Square
220 Key Tower
Cleveland Ohio   44114


**ATTORNEYS FOR APPELLEE**

Kurt S. Siegfried
James N. Kline
Bruce P. Mandel
Robert E. Zulandt
Ulmer & Berne, L.L.P.
1660 West 2nd Street
Suite 1100
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Plaintiffs-appellants, the estate of Ian W. Blandford and Donna Blandford (collectively referred to as "appellants"), appeal the trial court's judgment granting summary judgment to defendant-appellee, The Edward R. Hart Company ("Hart"). Appellants raise a single assignment of error for our review:

> The trial court erred by entering an order granting summary judgment in favor of [Hart] where genuine issues of material fact existed as to its liability as a supplier pursuant to R.C. 2307.78.

**{¶2}** After review, we find that genuine issues of material fact remain regarding whether Hart was negligent for failing to warn about the dangers of asbestos. We therefore affirm the trial court's judgment in part (with respect to strict liability), and reverse in part (with respect to negligent failure to warn).

## I. Procedural History and Factual Background

**{¶3}** From approximately 1955 through 1998, Ian Blandford worked as a pipefitter in Canton, Ohio, and was a member of the Plumbers & Pipefitters Union Local 94. Throughout his career, he worked at various locales, including residential, commercial, and industrial locations. As a pipefitter, Ian was exposed to asbestos from various products, including pipe insulation, cement, gaskets, and welding rods. Ian was diagnosed with malignant mesothelioma in September 2013 as a result of his exposure to asbestos.

**{¶4}** In December 2013, Ian and Donna Blandford filed suit against 36 named defendants, including Hart, alleging negligent failure to warn, common law and statutory

strict liability, breach of express and implied warranty, punitive damages, conspiracy, and loss of consortium. Ian passed away in July 2014; his estate now stands in his place in the lawsuit.

{¶5} In July 2014, Hart moved for summary judgment, which appellants opposed. In February 2015, the trial court granted Hart's motion for summary judgment. In May 2015, the trial court issued a judgment stating that it granted Hart's motion for summary judgment and that there was no just cause for delay. It is from this judgment that appellants appeal, challenging the trial court's granting of summary judgment to Hart only with respect to their statutory negligence claim under R.C. 2307.78(A) and their statutory strict liability claim under R.C. 2307.78(B)(1) and (2).

## II. Standard of Review

{¶6} An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court "uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶7} Under Civ.R. 56(C), summary judgment is properly granted when: (1) there

is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1976). If the moving party fails to satisfy its initial burden, "the motion for summary judgment must be denied." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). But if the moving party satisfies "its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶8} In this appeal, appellants assert that the trial court erred in granting summary judgment to Hart. In their single assignment of error, appellants raise three issues for our review: (1) that the trial court erred in granting summary judgment to Hart based on strict liability under R.C. 2307.78(B)(1); (2) that the trial court erred in granting summary judgment to Hart based on R.C. 2307.78(B)(2); and (3) that the trial court erred in granting summary judgment to Hart based on negligent failure to warn under R.C. 2307.78(A)(1).

### III. Ohio Product Liability Act

{¶9} Hart was not a manufacturer of asbestos products, but a supplier of asbestos-containing insulation products.

{¶10} Under R.C. 2307.78(A), a "supplier" may be directly and independently liable only when the supplier's independent negligence contributed to an injury, or when

the supplier made its own inaccurate representations regarding the product's safety, quality, or character. *Luthman v. Minster Supply Co.*, 3d Dist. Auglaize No. 2-06-43, 2008-Ohio-165, ¶ 9. As pertinent to this appeal,

> a supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that * * * [t]he supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages[.]"

R.C. 2307.78(A)(1).

{¶11} Under R.C. 2307.78(B), a "supplier" may be subject to "substituted liability" in place of a "manufacturer." *Potts v. 3M Co.*, 8th Dist. Cuyahoga No. 87977, 2007-Ohio-1144, ¶19, 23, *discretionary appeal not allowed, Potts v. 3M Co.*, 115 Ohio St.3d 1412, 2007-Ohio-4884, 873 N.E.2d 1316.

{¶12} R.C. 2307.78(B) reads in pertinent part as follows:

A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code and any of the following applies:

(1) The manufacturer of that product is not subject to judicial process in this state;

(2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer[.]

## A. R.C. 2307.78(B)(1) — Judicial Process

{¶13} Appellants argue that the trial court erred when it granted summary judgment

to Hart because Hart is strictly liable under R.C. 2307.78(B)(1) "as if it were the manufacturer" because the manufacturer, Owens Corning, is not subject to "judicial process" in this state due to the fact that it filed for bankruptcy in October 2000. Appellants maintain that because there is a stay, which prohibits the service of process on a debtor in a bankruptcy proceeding, Owens Corning is not subject to "judicial process" in this state.

{¶14} Appellants acknowledge that in *Potts*, 8th Dist. Cuyahoga No. 87977, 2007-Ohio-1144, this court defined "judicial process" under R.C. 2307.78(B)(1). We held that "judicial process" was akin to "personal jurisdiction." *Id.* at ¶ 20. Moreover, this court further held that "bankruptcy did not prevent the manufacturers from being subject to judicial process." *Id.* at ¶ 21.

{¶15} Appellants ask this court to revisit our holding in *Potts*, but we decline to do so. Because there is no dispute that Owens Corning is subject to personal jurisdiction in the state of Ohio, R.C. 2307.78(B)(1) is not applicable to impose strict liability on Hart as a supplier.

**B.  R.C. 2307.78(B)(2) — Insolvency**

**{¶16}** Appellants further argue that the trial court erred when it granted summary judgment to Hart because Hart is strictly liable under R.C. 2307.78(B)(2) "as if it were the manufacturer" because the manufacturer, Owens Corning, is insolvent. Appellants maintain that "[t]he act of filing a bankruptcy petition in and of itself is an allegation of 'actual or asserted insolvency'" under R.C. 2307.78(B)(2). We disagree. We addressed this exact argument in *Potts* as well, explaining that "[i]nsolvency is defined as an inability to pay one's debts. Although filing bankruptcy may be an assertion of insolvency, not all bankruptcy actions necessarily result in insolvency." *Id*. at ¶ 21. As we stated in *Potts*, although Owens Corning voluntarily filed bankruptcy in October 2000, "today [it] is a fully functioning corporation with a trust worth over $1 billion in assets and $8.9 billion in asbestos reserves." *Id.* at ¶ 22. Although *Potts* was decided in 2007, there is no evidence that Owens Corning is insolvent today. And indeed, Owens Corning reported adjusted earnings of $304 million in its 2015 year-end investor report. *See* Owens Corning, *Financial News Details, Owens Corning Reports Fourth-Quarter and Full-Year 2015 Results* (Feb. 10, 2016), http://investor.owenscorning.com/financial-news/financial-news-details/2016-Owens-Corning-Reports-Fourth-Quarter-and-Full-Year-2015-Results/default.aspx (accessed Mar. 14, 2016).

**{¶17}** Thus, we find no error in the trial court's granting of summary judgment with respect to Hart's "substituted liability" under R.C. 2307.78(B)(1) or (2).

**C. Negligent Failure to Warn**

**{¶18}** Appellants also contend that the trial court erred in granting summary judgment to Hart on their statutory negligence claim. First, appellants argue that the trial court did not even address this claim. We disagree. The trial court set forth each argument in Hart's motion for summary judgment, including Hart's argument that it was not liable in statutory negligence. The trial court then set forth appellants' opposing arguments, including that Hart was liable under a negligence theory (although it did incorrectly refer to Hart as a manufacturer and incorrectly stated "vicarious liability can be established under a negligence theory"). The trial court then found that no genuine issues of material fact remain, and granted summary judgment to Hart. Thus, we can assume from its judgment that it granted summary judgment on each argument that it set forth in the opinion (we would assume so even if it had granted summary judgment to Hart without any opinion). Further, we afford no deference to the trial court's decision on summary judgment and must independently determine if the trial court properly granted it.

**{¶19}** Appellants argue that in its responsive pleading to Hart's motion for summary judgment, they pointed to specific evidence in the record that established genuine issues of material fact remain as to whether Hart negligently failed to warn Ian Blandford of the dangers of asbestos.

**{¶20}** Pursuant to R.C. 2307.78(A)(1), a supplier is liable on a products liability claim if the claimant establishes by a preponderance of the evidence that the supplier was negligent and that this negligence was a proximate cause of the claimant's injury. This negligence can take the form of the lack of a proper warning accompanying a latently

dangerous product. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 325, 364 N.E.2d 267 (1977). Thus, a supplier may be held liable under the theory of negligent failure to warn even though it did not manufacture the product. *Id.*

{¶21} To hold a defendant liable for negligent failure to warn, the plaintiff must show that there was a duty to warn, that the duty was breached, and that an injury proximately resulted. *Freas v. Prater Constr. Corp., Inc.*, 60 Ohio St.3d 6, 8-9, 573 N.E.2d 27 (1991). According to the Restatement of the Law 2d, Torts, Section 388 (1965):

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 53, 567 N.E.2d 1027 (1991); *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 256-257, 556 N.E.2d 1177 (1990) (stating that Ohio uses this restatement section).

{¶22} In *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph one of the syllabus, the Ohio Supreme Court held that "[f]or each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving

exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury." *See also* R.C. 2307.96.

**{¶23}** The substantial factor test is set forth in R.C. 2307.96(B). It provides as follows:

> In determining whether exposure to a particular defendant's asbestos was a substantial factor in causing the plaintiff's injury or loss, the trier of fact in the action shall consider, without limitation, all of the following:
>
> (1) The manner in which the plaintiff was exposed to the defendant's asbestos;
>
> (2) The proximity of the defendant's asbestos to the plaintiff when the exposure to the defendant's asbestos occurred;
>
> (3) The frequency and length of the plaintiff's exposure to the defendant's asbestos;
>
> (4) Any factors that mitigated or enhanced the plaintiff's exposure to asbestos.

*See also Whipkey v. Aqua-Chem, Inc.*, 8th Dist. Cuyahoga No. 96672, 2012-Ohio-918.

**{¶24}** To establish that a supplier was negligent for failing to warn about the dangers of a product, a plaintiff must present evidence that the supplier knew or should have known in the exercise of ordinary care, of the risk of the hazard about which it failed to warn. *Boyd v. Lincoln Elec. Co.*, 179 Ohio App.3d 559, 2008-Ohio-6143, ¶ 19 (8th Dist.) (discussing failure to warn with respect to a manufacturer, but the law is relevant to a supplier as well under R.C. 2307.78(A)(1)).

**{¶25}** In its summary judgment motion, Hart did not argue that Ian was not exposed to asbestos-containing products supplied by Hart, or that the asbestos-containing products supplied by Hart were not a substantial factor in causing his mesothelioma. Hart only

argued that appellants did not put forth any evidence establishing that Hart was aware of the dangers of asbestos during the relevant time period.

**{¶26}** Appellants contend that it submitted "credible evidence that [Hart] knew or should have known as early as the 1930's that the asbestos-containing products it was placing into the stream of commerce were hazardous, creating a duty on its part to warn those who used or were otherwise exposed to these products." Specifically, appellants point to expert evidence that it submitted, including that of Dr. Barry Castleman, establishing that the health hazards of asbestos and asbestos-containing products were well known in the medical and industrial circles by the early 1930s. Appellants further cite to two other expert reports that it submitted essentially establishing the same.

**{¶27}** Hart contends that appellants' expert reports did not say anything about small "mom and pop" shops, such as Hart. But Hart does not cite any authority for this argument, and we find no credence in it. Rather, we must look to the evidence presented in this case to determine if genuine issues of material fact remain. If genuine issues of material fact remain, then summary judgment is not appropriate because reasonable minds could come to different conclusions.

**{¶28}** According to appellants, Hart had "no knowledge of the asbestos hazard until informed by the manufacturers when they ceased using asbestos-containing insulation products in the early 1970's." In support of this argument, Hart points to Harry Rennecker's deposition testimony and interrogatory answers. Rennecker's family owned Hart during the relevant time period and is still owns 51 percent of it. Rennecker began

working at Hart as a teenager in the early 1960s, and is now chairman of the board of the company.

{¶29} In support of the argument that Hart did not know about the dangers of asbestos until the early 1970s, Hart points to its answer to interrogatory No. 25, where Rennecker stated:

> Hart has generally always had about 25 employees. Accordingly, Hart cannot know when any one of them may have obtained such knowledge. Moreover, Hart never had any scientific industrial hygiene, medical personnel, or other such professionals on staff who may have had access to information earlier than others. Hart generally became aware of some alleged hazardous potential associated with asbestos when it became publicized. Hart depended upon the manufacturers to provide a safe and high quality product and upon the premise owners to request or specify products that were safe for use and to use proper precautions on its premises.

{¶30} After reviewing Rennecker's answer, it does not support Hart's argument that Hart had no knowledge of the hazards of asbestos until the 1970s. Indeed, Rennecker states that Hart did have a general awareness about the hazards of asbestos when it became publicized, but he was not specific as to when that was. According to evidence submitted by appellants, however, the hazards of asbestos were first published in the 1930s, and were well known in industrial and medical circles by the 1950s and 1960s. Further, in Rennecker's deposition, he stated that he "later" learned that insulation products that Hart was supplying and installing had asbestos in them, but he did not specify when that was. But notably, Rennecker did not state anywhere in his deposition that he, or anyone at Hart, was not aware of the hazards of asbestos during the relevant time period.

**{¶31}** Further, appellants submitted evidence that when viewed in a light most favorable to appellants established that Ian Blandford was exposed to asbestos-containing products supplied by Hart, and that such exposure was a substantial factor in causing his mesothelioma. Ian testified in his deposition and video deposition that as a pipefitter, he was exposed to many products containing asbestos, including pipe insulation. Ian worked at many locations throughout his career, including residential, commercial, and industrial. Ian said that in "bigger jobs," there were "insulators on the job." Ian stated that approximately 40 to 50 percent of the time, insulation work was required. When they needed insulation work, Ian estimated that approximately 90 percent of the time, there were insulators "who came in separately" to do the work. Ian stated that "[w]e used Hart most of the time." He recalled Hart contractors using Kaylo pipe insulation, and fiberglass insulation. Ian said that he worked with Hart contractors "together for 20, 30, 40 years and we knew each other," and he said they ate lunch together. Thus, appellants pointed to specific evidence establishing that genuine issues of material fact remain regarding (1) Hart's knowledge about the dangers of asbestos, (2) whether Ian was exposed to asbestos-containing products supplied by Hart, and (3) whether those products were a substantial factor in causing Hart's mesothelioma. Accordingly, we find that genuine issues of material fact remain regarding whether Hart was negligent for failing to warn about the dangers of asbestos.

**{¶32}** Appellants' assignment of error is overruled in part (with respect to strict liability), and sustained in part (with respect to negligent failure to warn).

**{¶33}** Judgment affirmed in part with respect to strict liability, and reversed in part with respect to negligent failure to warn. Case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
TIM McCORMACK, P.J., DISSENTS (WITH SEPARATE OPINION)


TIM McCORMACK, P.J., DISSENTING:

**{¶34}** I have thoroughly reviewed the respective arguments. It is my determination that the trial court properly applied the applicable law.