JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Defendants-appellants appeal the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the facts and the case, appellees James ("James") and Freda Sinnott (collectively "appellees") filed their initial complaint on February 10, 2004. The complaint was filed before the enactment of Am. Sub. H.B. No. 292, 150 Ohio Laws, Part III, 3970 ("H.B. No. 292"), [1] which included new requirements for the filing of asbestos complaints pursuant to R.C. 2307.92. Appellees[2] filed their complaint against several companies, including the following: American Optical Corporation, Abex Corporation, now known as Pneumo Abex LLC, and Viacom, Inc., Aqua-Chem Inc., and others, alleging injury to James Sinnott from workplace exposure to products containing asbestos.
 {¶ 3} In April 2004, appellees dismissed without prejudice American Optical Corporation and Pneumo Abex. After the effective date of H.B. No. 292, in January 2005, appellees filed an amended complaint, again naming appellants American Optical Corporation and Pneumo Abex as defendants. *Page 5 
 {¶ 4} Because the amended complaint was filed after the effective date of H.B. No. 292, American Optical Corporation filed a motion to administratively dismiss appellees' claim for failure to comply with R.C. 2307.92. Pneumo Abex later joined that motion. Although appellees opposed the motion to dismiss, they also provided supplemental medical evidence and records regarding James' illness. American Optical Corporation continued to argue for administrative dismissal, claiming that the supplemental evidence did not satisfy the requirements of R.C. 2307.91, et seq. The trial court held that while the requirements of H.B. No. 292 applied to the amended complaint, appellees had fulfilled those requirements, and the case could proceed to trial.
 {¶ 5} Appellants filed an appeal with this court that was dismissed as premature pursuant to R.C. 2505.02.[3] Appellants then filed an appeal with the Ohio Supreme Court, who reversed and remanded the case on October 25, 2007. The Ohio Supreme Court determined that orders finding that plaintiffs have made the prima facie showings required by R.C. 2307.92 are final and appealable. This case is now again before this court of appeals.
 II. {¶ 6} Appellants' assignment of error provides the following: "The trial court erred in finding that Plaintiff made a prima-facie showing under R.C. 2307.92."
 III. *Page 6 {¶ 7} Appellants argue in their sole assignment of error that the lower court erred in finding that plaintiff made a prima-facie showing under R.C. 2307.92.
 {¶ 8} An order finding that a plaintiff in an asbestos action has made the prima facie showing required by R.C. 2307.92 is a final, appealable order under R.C. 2505.02(B)(4). Sinnott v. Aqua-Chem, Inc.,116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217.
 {¶ 9} Prior to the enactment of H.B. No. 292, the prior statute, R.C. 2305.10, set forth the prevailing requirements placed upon an asbestos litigant:
 {¶ 10} "a cause of action for bodily injury caused by exposure toasbestos * * * arises upon the date on which the Plaintiff-Appellee isinformed by competent medical authority that the Plaintiff-Appellee hasbeen injured by such exposure, or upon the date on which, by exercise ofreasonable diligence, the Plaintiff-Appellee should have become awarethat he had been injured by the exposure, whichever date occursfirst."[4]
 {¶ 11} H.B. No. 292, the asbestos litigation bill, became effective on September 2, 2004. The General Assembly found it crucial to codify these criteria because the "vast majority" of asbestos claims "are filed by individuals who allege they have been exposed to asbestos and who have some physical sign of exposure to asbestos, but who do not suffer from an asbestos-related impairment."[5] *Page 7 
 {¶ 12} The statutory mandate to satisfy certain minimum "prima-facie" criteria is set forth at R.C. 2307.93(A). This statute provides:
 "The plaintiff in any tort action who alleges an asbestos claim shall file * * * a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is applicable."[6]
 {¶ 13} Divisions (B), (C), and (D) of R.C. 2307.92 describe the minimum requirements for three different classes of asbestos claims: a claim based on a nonmalignant condition (Division B); a claim based upon lung cancer of an exposed person who is a smoker (Division C); and a claim based upon a wrongful death (Division D).[7]
 {¶ 14} The requirements for all three divisions involve a "competent medical authority" who indicates to the court that the plaintiff has satisfied a minimum medical threshold sufficient to support that the "person's exposure to asbestos is a substantial contributing factor to the medical condition."[8] "Competent medical authority," for purposes of the prima-facie showing is, among other things, a treating physician who actually has or had a doctor-patient relationship with the exposed person. See R.C. 2307.91(Z).
 {¶ 15} In the case at bar, James was diagnosed with a lung mass that was observed on an x-ray in August 2003 after completing a series of tests. The tests included pulmonary function tests and x-rays by certified pulmonologist and B-Reader, Robert Altmeyer, M.D. *Page 8 
Dr. Altmeyer discussed the matter with James and recommended further testing. Subsequent tests and a lung biopsy at the Veterans Administration Hospital in Huntington, West Virginia confirmed the malignancy.
 {¶ 16} Later, a Dr. Ross referred James to a pulmonary specialist, Dr. Ammar Ghanem; also signing was Dr. Nancy Munn. Throughout the records are notations documenting James' history. There are comments, such as, "patient has significant asbestos exposure in past when works in a factory for 35-36 years."[9] Another report states, "A: Right upper lobe mass with h/o smoking and asbestos exposure make the patient high risk of lung cancer."[10]
 {¶ 17} Once these medical tests were complete, Dr. Altmeyer reviewed his records and the new medical records confirming his original suspicions. He stated the following on July 5, 2005:
 "Based upon my review of the above records, it is my opinion that this man's tobacco smoking and asbestos exposure were major contribution causes for the development of his lung cancer, which is documented in these records. * * * Unfortunately, individuals who have had a significant exposure to asbestos, with an appropriate latency period and have had a significant smoking history, have approximately 80-100 times the risk of developing lung cancer compared to the population of individuals who have never smoked tobacco and who have never been exposed to asbestos. This is the well known and universally accepted synergistic or multiplier effect that exists between asbestos exposure and tobacco smoking. Therefore, it is my opinion that both the man's tobacco smoking history and his asbestos *Page 9 
exposure/asbestos were both significant contributing causes for the development of his lung cancer."[11]
 {¶ 18} In addition to the above, board certified pulmonologist Arthur Frank, M.D., also reviewed James' records and stated the following:
 "Based upon my review of the materials sent me, it is my opinion, held with a reasonable degree of medical certainty, that Mr. Sinnott developed two asbestos related conditions. First I believe he developed asbestosis as characterized by the radiologic changes, given his past history of exposure to asbestos. Secondly, and more importantly, he developed and ultimately died of, a cancer of the lung due to his exposure to asbestos in combination with his cigarette smoking. It would further be my opinion that the scientific literature clearly documents that both asbestos and cigarettes, independently, can lead to the development of lung cancer, but that it is also well known that the addition of asbestos on top of cigarette smoking greatly increases the risk of developing lung cancer, far beyond that of cigarette smoking alone. In addition it would further be my opinion that each and every exposure, to any and all products containing asbestos, of any and all fiber types, would have contributed to his developing both of these diseases. This would include his work at the foundry, as well as his many exposures to brake and clutch products."[12]
 {¶ 19} The evidence submitted was sufficient to establish a causal link between James' lung cancer and his asbestos exposure. In addition, James provided ample evidence demonstrating that his occupational asbestos exposure was a substantial factor in causing his lung cancer. Appellee submitted hospital records documenting his diagnosis of lung cancer, history of smoking, and asbestos exposure. Two pulmonologists, Dr. Altmeyer and Dr. *Page 10 
Frank, rendered opinions consistent with the hospital pulmonologists as to the causes of James' lung cancer.
 {¶ 20} R.C. 2307.91(Z) defines the term "competent medical authority" as meaning a medical doctor who (1) is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in R.C. 2307.92, and (2) meets the requirements listed in R.C. 2307.91(Z)(1)-(4).
 {¶ 21} R.C. 2307.91(Z) provides the following:
 "(Z) `Competent medical authority' means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements:
 (1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.
 (2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.
 (3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:
 (a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;
 (b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process; *Page 11 
 (c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.
 (4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty percent of its revenues from providing those services."
 {¶ 22} James' treating physicians were employed by the Veterans Administration. This limited James' ability to achieve the typical doctor-patient relationship envisioned by the statute. However, achieving the typical doctor-patient relationship in the statute is not a bright line test. Nor is it the sole factor in the statute.
 {¶ 23} As the appellants stated in their brief, part of the rationale behind the statute is to preserve scarce resources for individuals who are truly sick as a result of asbestos exposure. The statute is not in place to penalize veterans or other nontraditional patients who were properly diagnosed by competent medical authority personnel and have the medical records and other evidence to support their claim. The evidence in the case at bar supports the lower court's ruling. Appellees have satisfied the requirements of the statute.
 {¶ 24} James should not be penalized for utilizing his veteran benefits in order to obtain affordable and necessary health care. Although James may have lacked a traditional doctor, he was examined by a competent medical doctor, as defined in the statute. In addition, the evidence in this case supports James' doctors' diagnosis. That fact that he was *Page 12 
examined by a doctor employed by the Veterans Administration does not diminish the value of the evidence contained in the medical records. We find the lower court's decision to be well-founded.
 {¶ 25} Appellants' assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] The General Assembly enacted H.B. No. 292 in 2004. The bill was a comprehensive new approach to asbestos litigation, and the changes were codified in amendments to R.C. 2505.02 and the creation of R.C. 2307.91
through 2307.96 and R.C. 2307.98.
[2] James Sinnott died on August 25, 2005, and this action was maintained by his surviving spouse. While this appeal was pending, his spouse also died.
[3] Sinnott v. Aqua-Chem, Inc. (July 12, 2006), Cuyahoga App. No. 88062.
[4] R.C. 2305.10.
[5] Section 3(A)(5), H.B. No. 292 (R.C. 2307.91, uncodified law), Apx. at 9.
[6] R.C. 2307.93(A), Apx. at 15.
[7] R.C. 2307.92, Apx. at 11-13.
[8] R.C. 2307.92(B), (C)(1), and (D)(1), Apx. at 11-13.
[9] Ex. B, appellees' brief, pp. 43, 44, and 47.
[10] Ex. B, appellees' brief, p. 46.
[11] Ex. C, appellees' brief.
[12] Ex. D, appellees' brief. *Page 1