[Cite as *Whipkey v. Aqua-Chem, Inc.*, 2012-Ohio-918.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96672**

# MARILYN WHIPKEY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM WHIPKEY, DECEASED

PLAINTIFF-APPELLANT

vs.

# AQUA-CHEM, INC., ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-521667

**BEFORE:** Kilbane, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 8, 2012

**ATTORNEYS FOR APPELLANT**

Linda G. Lagunzad
David P. Pavlik
Brent Coon & Associates
Summit One Building
4700 Rockside Road
Independence, Ohio 44131

**ATTORNEYS FOR APPELLEES**

Steven G. Blackmer
5500 Corporate Drive, Suite 150
Pittsburgh, Pennsylvania 15237

**For Allied Glove Corp., et al.**

Stephen R. Mlinac
Anne L. Wilcox
Swartz Campbell, LLC
4750 U.S. Steel Tower
600 Grant Street
Pittsburgh, Pennsylvania 15219

**For Clark Industrial Insulation Co.**

John A. Valenti
The Bradley Building, Suite 305
1220 West 6th Street
Cleveland, Ohio 44113

**For Corhart Refractories**

Corhart Refractories
Route 6, Box 82
Buckhannon, WV 26201

**For E.I. Dupont De Nemours & Co.**

E.I. Dupont De Nemours & Co.
CT Corporation
1300 East 9th Street, #1010
Cleveland, Ohio    44114

**For General Refractories**

General Refractories
225 City Line Avenue
Bala Cynwyd, Pennsylvania 19004

**For Honeywell International, Inc.**

Melanie M. Irwin
Lola M. James
Willman & Silvaggio
5500 Corporate Drive, Suite 150
Pittsburgh, Pennsylvania 15237

**For Riley Stoker Corporation**

Matthew C. O'Connell
Christina Tuggey Hidek
Sutter, O'Connell, Mannion, & Farchione
3600 Erieview Tower
1301 East 9th Street
Cleveland, Ohio 44114

**For Tasco Insulations, Inc.**

Kevin C. Alexandersen
Thomas E. Dover
Daniel J. Michalec
Gallagher Sharp
6th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

**For The Flintkote Company**

Barbara J. Arison
Jenifer E. Novak
Michael E. Smith
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114

**For Uniroyal, Inc.**

Uniroyal, Inc.
70 Great Hill Road
Naugatuck, CT 06770

MARY EILEEN KILBANE, J.:

**{¶1}** Plaintiff-appellant, Marilyn Whipkey (Marilyn), as Personal Representative of the Estate of William Whipkey, appeals the trial court's decision granting defendants-appellees' motion to administratively dismiss her complaint. Finding merit to the appeal, we reverse and remand.

**{¶2}** The facts of this case were previously set forth by this court in *Whipkey v. Aqua-Chem, Inc.*, 8th Dist. No. 88240, 2009-Ohio-3369, 2009 WL 1965451.

On or about February 9, 2004, William and Marilyn Whipkey filed a complaint against various defendants, including GM and Garlock, alleging injury due to exposure to asbestos-containing products manufactured and/or distributed by each defendant. [From 1958-1993, William worked at Copperweld Steel as a laborer, scarfer helper, handyman, and burner recorder.] More specifically, the Whipkeys' claim is based upon William Whipkey's development of lung cancer. GM argues in its brief to this court that Mr. Whipkey's own admission and medical documentation indicate that he had been a cigarette smoker for over 40 years of his life, even continuing to use tobacco following his lung cancer diagnosis.

\* \* \*

In August 2005, GM moved to administratively dismiss the Whipkeys' lawsuit. GM argued that the Whipkeys failed to provide a prima facie case as required by H.B. 292. Specifically, GM maintained that the Whipkeys failed to submit a report from a competent medical authority concluding that William Whipkey's exposure to asbestos was a substantial contributing factor to his lung cancer. GM argued that Mr. Whipkey's long history of smoking was a substantial contributing factor to his lung cancer, and the Whipkeys argued that the retroactive application of H.B. 292 affected a substantial right.

After a hearing in February 2006, the trial court denied GM's motion, finding that the Whipkeys filed their complaint in February 2004, which was prior to the effective date of H.B. 292. Therefore, the court

concluded that the case would proceed under the law that was in effect prior to September 2, 2004. It is from this order that appellants GM and Garlock appealed. The Whipkeys moved to dismiss the appeal for lack of final appealable order. This court granted the claimants' motion to dismiss in July 2006.

Appellants then appealed to the Ohio Supreme Court, contending that the trial court's decision is a final appealable order. See *Whipkey v. Aqua-Chem, Inc.*, 112 Ohio St.3d 1440, 2007-Ohio-152, 860 N.E.2d 765. The Supreme Court reversed and remanded the matter, finding that the trial court's decision was a final appealable order pursuant to *In re Special Docket No. 73958*, [115 Ohio St.3d 425, 2007-Ohio-5268, 875 N.E.2d 596]. *Id.* at ¶ 2, 5-7.

**{¶3}** On September 24, 2007, William passed away at the age of 69. The action was maintained by Marilyn, individually and on behalf of William's Estate.

**{¶4}** On appeal before this court, the Whipkeys argued the trial court erred by "declining to retroactively apply the provisions of R.C. 2307.91, R.C. 2307.92, and R.C. 2307.93" to their case. *Id.* at ¶ 9. In July 2009, we reversed the trial court's judgment, finding that "[t]he requirements in R.C. 2307.92 and 2307.93, regarding asbestos-related personal injury litigation, are remedial and procedural in nature and are, therefore, not unconstitutionally retroactive." *Id.* at ¶ 14, citing *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118.

**{¶5}** Upon remand, defendant-Ford filed a renewed motion to administratively dismiss Marilyn's case for failing to submit prima-facie evidence of an asbestos-related impairment. Ford argued that Marilyn's evidence does not meet the threshold requirement to maintain a smoking-lung cancer claim under R.C. 2307.93(C). Marilyn opposed, arguing that the medical evidence submitted by her substantively complied with

the prima-facie requirements. After a hearing on the matter, the trial court granted

Ford's motion to administratively dismiss, finding that:

> [H.B. 292] requires a plaintiff to follow a number of steps and submit detailed asbestos exposure and smoking histories reported by competent medical authorities. [Marilyn's] experts have failed to establish a prima-facie case demonstrating that William Whipkey's alleged exposure to asbestos was a substantial contributing factor in causing his lung cancer.

{¶6} It is from this order that Marilyn now appeals, raising the following single assignment of error for review.

## ASSIGNMENT OF ERROR

> The trial court erred in granting appellees' renewed motion to administratively dismiss for failure to submit prima facie evidence of asbestos-related impairment pursuant to [R.C. 2307.92 and 2907.93].

## Standard of Review

{¶7} Effective September 2, 2004, R.C. 2307.93(A)(1) requires a plaintiff in an asbestos action to file, "within thirty days after filing the complaint or other initial proceeding, a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum medical requirements specified in division (B), (C), or (D) of [R.C. 2307.92] * * *." If the defendant in an asbestos action challenges the adequacy of the prima-facie evidence of the exposed person's physical impairment, the trial court, using the standard for resolving a motion for summary judgment, must determine whether the proffered prima-facie evidence meets the minimum medical requirements specified in R.C. 2307.92. *See* R.C. 2307.93(B).

**{¶8}** In *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, the Ohio Supreme Court stated:

> The summary judgment standard requires the trial court to grant judgment for the moving party "when looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687, 653 N.E.2d 1196. Furthermore, summary judgment "must be awarded with caution. Doubts must be resolved in favor of the non-moving party." *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138. Thus, if a defendant challenges the medical evidence presented by a plaintiff, the evidence must be construed most favorably for the plaintiff and against the defendant. *Id.* at ¶ 29.

Prima-Facie Showing

**{¶9}** R.C. 2307.92 establishes the minimum medical requirements that a plaintiff with an asbestos claim must satisfy to maintain the action and requires the plaintiff to make a prima-facie showing of those minimum medical requirements.

**{¶10}** The instant case involves a plaintiff who alleged an asbestos claim based on a malignant condition. Therefore, the claim is governed by R.C. 2307.92(C), which provides in pertinent part:

> No person shall bring or maintain a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima-facie showing, in the manner described in [R.C. 2307.93(A)], that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition. That prima-facie showing shall include all of the following minimum requirements:
>
> (a) A diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer;
>
> (b) Evidence that is sufficient to demonstrate that at least ten years have elapsed from the date of the exposed person's first exposure to asbestos until the date of diagnosis of the exposed person's primary lung cancer. The ten-year latency period described in this division is a rebuttable presumption, and the plaintiff has the burden of proof to rebut the presumption.
>
> (c) Either of the following:
>
> (i) Evidence of the exposed person's substantial occupational exposure to asbestos;
>
> (ii) Evidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information about the exposed person's occupational history and history of exposure to asbestos.

**{¶11}** R.C. 2307.91(FF) defines "substantial contributing factor" as including both of the following:

(1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim.

(2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred.

{¶12} R.C. 2307.91(Z) defines "competent medical authority" as:

a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in [R.C. 2307.92] and who meets the following requirements:

(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.

(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.

(3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:

(a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;

(b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;

(c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.

(4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or

expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenues from providing those services.

**{¶13}** Marilyn, relying on this court's decision in *Sinnott v. Aqua-Chem, Inc.*, 8th Dist. No. 88062, 2008-Ohio-3806, appeal not allowed by *Sinnott v. Aqua-Chem, Inc.*, 120 Ohio St.3d 1490, 2009-Ohio-278, 900 N.E.2d 199, argues that the medical evidence she submitted is in substantial compliance with the requirements of R.C. 2307.92(C). On the other hand, defendants argue the reports submitted by Marilyn do not satisfy the prima-facie requirements in R.C. 2307.92(C) because the physicians did not have a doctor-patient relationship with William, and thus, do not qualify as competent medical authority. We find *Sinnott* analogous to the instant case.

**{¶14}** In *Sinnott*, the plaintiffs, James and Freda Sinnott, brought an action against various asbestos manufacturers, alleging James sustained injuries from workplace exposure to products containing asbestos. *Id.* at ¶ 2. Plaintiffs filed their initial complaint in February 2004, which was approximately seven months before the enactment of H.B. 292. *Id.* Plaintiffs then filed an amended complaint in January 2005, and defendants moved to administratively dismiss plaintiffs' complaint. *Id.* at ¶ 4. The trial court denied defendants' motion, finding "that while the requirements of H.B. No. 292 applied to the amended complaint, appellees had fulfilled those requirements, and the case could proceed to trial." *Id.*

**{¶15}** Defendants "filed an appeal with this court that was dismissed as premature pursuant to R.C. 2505.02. * * * [Defendants] then filed an appeal with the

Ohio Supreme Court, who reversed and remanded the case[, determining] * * * that orders finding that plaintiffs have made the prima facie showings required by R.C. 2307.92 are final and appealable." *Id.* at ¶ 5.

{¶16} On appeal, defendants argued that the lower court erred in finding that plaintiff made a prima-facie showing under R.C. 2307.92. The issue was whether a doctor-patient relationship was established to satisfy the requirement that the diagnosis of asbestosis be rendered by a "competent medical authority." We affirmed the trial court's decision, finding that there was "sufficient evidence to establish a causal link between James's lung cancer and his asbestos exposure." *Id.* at ¶ 19.

{¶17} In reaching our decision, we noted that:

> Prior to the enactment of H.B. No. 292, the prior statute, R.C. 2305.10, set forth the prevailing requirements placed upon an asbestos litigant:
>
> a cause of action for bodily injury caused by exposure to asbestos * * * arises upon the date on which the Plaintiff-Appellee is informed by competent medical authority that the Plaintiff-Appellee has been injured by such exposure, or upon the date on which, by exercise of reasonable diligence, the Plaintiff-Appellee should have become aware that he had been injured by the exposure, whichever date occurs first. [R.C. 2305.10.]
>
> H.B. No. 292, the asbestos litigation bill, became effective on September 2, 2004. The General Assembly found it crucial to codify these criteria because the "vast majority" of asbestos claims "are filed by individuals who allege they have been exposed to asbestos and who have some physical sign of exposure to asbestos, but who do not suffer from an asbestos-related impairment." [Section 3(A)(5), H.B. No. 292 (R.C. 2307.91, uncodified law), Apx. at 9. *Id.* at ¶ 9-11.

{¶18} In *Sinnott*, James was diagnosed with a lung mass in August 2003, after completing a series of tests. The tests included pulmonary function tests and x-rays by

certified pulmonologist and B-Reader, Dr. Robert Altmeyer, M.D. Subsequent tests at the Veterans Administration Hospital in Huntington, West Virginia confirmed the malignancy. Later, Dr. Ross "referred James to a pulmonary specialist, Dr. Ammar Ghanem; also signing was Dr. Nancy Munn. Throughout the records are notations documenting James's history. There are comments, such as, 'patient has significant asbestos exposure in past when works in a factory for 35-36 years.' * * * Another report states, 'A: Right upper lobe mass with h/o smoking and asbestos exposure make the patient high risk of lung cancer.'" *Id.* at ¶ 16.

{¶19} Once these medical tests were complete, Dr. Altmeyer again reviewed James's records. He opined that both James's "'tobacco smoking history and his asbestos exposure/asbestos were both significant contributing causes for the development of his lung cancer.'" *Id.* at ¶ 17. In addition, board certified pulmonologist Dr. Arthur Frank, M.D., Ph.D., reviewed James's records and stated that James "'developed and ultimately died of, a cancer of the lung due to his exposure to asbestos in combination with his cigarette smoking.'" *Id.* at ¶ 18.

{¶20} In concluding that the evidence submitted was sufficient to establish a causal link between James's lung cancer and his asbestos exposure, we stated that:

> James' treating physicians were employed by the Veterans Administration. This limited James' ability to achieve the typical doctor-patient relationship envisioned by the statute. However, achieving the typical doctor-patient relationship in the statute is not a bright line test. Nor is it the sole factor in the statute.
>
> As the appellants stated in their brief, part of the rationale behind the statute is to preserve scarce resources for individuals who are truly sick as a

result of asbestos exposure. The statute is not in place to penalize veterans or other nontraditional patients who were properly diagnosed by competent medical authority personnel and have the medical records and other evidence to support their claim. The evidence in the case at bar supports the lower court's ruling. Appellees have satisfied the requirements of the statute.

James should not be penalized for utilizing his veteran benefits in order to obtain affordable and necessary health care. Although James may have lacked a traditional doctor, he was examined by a competent medical doctor, as defined in the statute. In addition, the evidence in this case supports James' doctors' diagnosis. That fact that he was examined by a doctor employed by the Veterans Administration does not diminish the value of the evidence contained in the medical records. We find the lower court's decision to be well-founded. *Id.* at ¶22-24.

{¶21} *Sinnott* and the case at hand are similar in many aspects. First, the Sinnotts and Whipkeys were originally designated as coplaintiffs in the same complaint against defendants. Second, both James and William utilized the benefits available to them in order to obtain affordable health care — James utilized his veteran benefits and William utilized his union benefits. Third, both William and James died before it had been ruled that H.B. 292 applied to their respective cases — James died in August 2005 and William died in September 2007. Fourth, both the Whipkeys and Sinnotts submitted expert reports from the same doctors, Dr. Altmeyer and Dr. Frank.

{¶22} We are aware of this court's recent decision in *Bland v. Ajax Magnethermic Corp.*, 8th Dist. No. 95249, 2011-Ohio-1247, 2011 WL 917707. In *Bland*, which is factually distinguishable from the matter before us, this court affirmed the trial court's decision to administratively dismiss plaintiffs' claim. *Bland*, however, does not involve the retroactive application of H.B. 292 to a complaint that was filed before the effective

date of the legislation, and the injured worker died before it was determined that the legislation could be applied. While we stated that *Sinnott* did not adopt a substantial compliance standard, we did acknowledge that the *Sinnott* court, "found that the doctor-patient relationship, which is not statutorily defined, varies depending on the treatment context." *Id.* at ¶ 25.

{¶23} In the instant case, just as in *Sinnott*, William had a nontraditional treatment context. As a veteran, James utilized his veteran benefits. As a union member, William utilized his union benefits. Prior to their respective examinations by Dr. Altmeyer in 2003, neither William nor James had a treating pulmonary physician. The Whipkeys submitted reports from two expert pulmonologists, Dr. Altmeyer and Dr. Frank, which are the same doctors who authored reports for the Sinnotts. In *Sinnott* we found that James was examined by a competent medical doctor. *Id.* at ¶ 24.

{¶24} Here, Dr. Altmeyer, a certified B-Reader, initially opined in 2003 that William's pulmonary function test and chest x-rays demonstrated impairment and interstitial changes consistent with asbestosis. He further opined "that the asbestosis was caused by the inhalation of asbestos fibers in the work place." Dr. Altmeyer recommended additional testing because the x-ray revealed a mass in William's left lung. Subsequent tests and a lung biopsy confirmed the malignancy. At Dr. Altmeyer's recommendation, both William and James consulted with other specialists and learned that they had lung cancer.

**{¶25}** Once the additional medical testing was completed, Dr. Altmeyer reviewed these documents and confirmed his original suspicions. He stated in a report dated June 4, 2004:

> [I]t is my opinion that [William's] prior tobacco use and asbestos exposure combined in a synergistic or multiplier fashion to greatly increase his chance of developing lung cancer. Individuals who have had a significant exposure to asbestos with an appropriate latency period, as is present in this case, and who are current or fairly recent tobacco smokers have approximately 80 to 100 times the usual or normal risk of developing lung cancer.
>
> However, since [William] stopped smoking cigarettes in 1995 and because he developed lung cancer approximately seven or eight years later, the risk of developing lung cancer from smoking had declined substantially during that time. If this smoking history is the correct one, then I believe that his asbestos exposure was the primary cause of his lung cancer and cigarette smoking was a secondary cause of his lung cancer. * * * My opinions in this report are given with a reasonable degree of medical certainty.

**{¶26}** Dr. Frank also reviewed William's medical records and stated:

> Based upon my review of the materials sent me, it is my opinion, held with a reasonable degree of medical certainty, that [William] developed a cancer of the lung due to his exposures to asbestos, in combination with his habit of cigarette smoking. The scientific literature clearly documents that both asbestos and cigarettes, independently, can lead to the development of lung cancer. However it is also well documented that addition of asbestos on top of cigarette smoking greatly increases the risk of developing lung cancer, far beyond that of cigarette smoking alone. It is not necessary to document underlying asbestosis to relate a lung cancer to the prior documented history of exposure to asbestos.
>
> Also, it would further be my opinion that each and every exposure, to any and all products containing asbestos that would have led to the inhalation of dust, would have contributed to his developing this lesion.
>
> The information in the records documents a wide variety of exposures to

many products, and there is no way to differentiate the asbestos from one product or another, in terms of its ability to produce disease such as has occurred in [William's case.]

{¶27} In addition, Marilyn submitted reports from Dr. Robert DeMarco, M.D., and Dr. Steven Dikman, M.D. Dr. DeMarco examined William for the Bureau of Workers' Compensation in December 2003. Dr. DeMarco opined that William's "carcinoma of the lung is related to asbestos related disease." Dr. Dikman reviewed William's medical records and stated that in his opinion, "with a reasonable degree of medical certainty, given the exposure history, clinical evidence of pulmonary asbestosis and a history of cigarette smoking, that both [William's] asbestos exposure and cigarette smoking were significant contributing factors in the development of lung carcinoma that resulted in his death." In another report, Dr. Dikman further opined that William's "asbestos exposure was a substantial factor in causing his lung cancer."

{¶28} When the Whipkeys and the Sinnotts filed their complaint against defendants in 2004, which was before the effective date of H.B. 292, there was no requirement of a "diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer." R.C. 2307.92(C)(1)(a). James Sinnott died in August 2005. Similarly, by the time it had been ruled that H.B. 292 applied to the Whipkeys' case, William had been dead for nearly two years, which made it impossible for Marilyn to comply with H.B. 292's requirements. Neither the Whipkeys nor the Sinnotts had reason to believe that they

would have to prove a prima-facie case under H.B. 292. As Justice Pfiefer stated in his dissent in *Ackison*:

> R.C. 2307.91(Z) is a special rule for asbestos plaintiffs only and is designed to attack the way their cases are brought. It changes the type of evidence necessary to prosecute a claim. It requires Danny Ackison, *a dead man*, to find an internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist to become his treating physician. Without that relationship, there is no claim. No statute or rule of evidence anywhere approaching that kind of evidentiary requirement existed at the time Ackison filed his claim. It adds an element to proving a claim that for Ackison is impossible to achieve. That requirement kills his cause of action by redefining it into oblivion. (Emphasis in original.) *Id.* at ¶ 92.

{¶29} In *Sinnott*, we stated, "[R.C. 2307.92] is not in place to penalize veterans or other nontraditional patients who were properly diagnosed by competent medical authority personnel and have the medical records and other evidence to support their claim." *Id.* at ¶ 23. Here, William was not aware of any asbestos-related disease until 2003. He then began the appropriate treatment for his cancer. After his diagnosis, a lawsuit was filed in 2004, which was in accordance with the then-existing common law. At that time, there were no prima-facie requirements under H.B. 292. In fact, discovery was complete and the matter was set for trial in October 2005. Then in August 2005, defendants moved to administratively dismiss the appeal, which the trial court denied.

{¶30} William passed away in September 2007, and under the authority of *Ackinson*, this court found that H.B. 292 could be retroactively applied to Marilyn's claim in July 2009. Upon remand, defendants took no further action to have the case dismissed. On January 21, 2011, the parties agreed to a case management order setting

the matter for trial again, this time in June 2011. Then on January 25, 2011, defendant-Ford moved to administratively dismiss the case.

{¶31} Alternatively, we note R.C. 2307.93(A)(1) states that "[t]he defendant has one hundred twenty days from the date of the specified type of prima-facie evidence is proffered to challenge the adequacy of that prima-facie evidence." Based on the stipulated record before us, discovery was completed in 2005. H.B. 292 was applied to the matter in July 2009. The defendants then moved to administratively dismiss the matter in January 2011, which is beyond the 120-day requirement in the statute. Additionally, there is no indication in the record before us that defendants sought leave to file the motion. Thus, it appears that defendants' motion was untimely and should have been denied by the trial court for that basis.

{¶32} Therefore, based on the foregoing, we find in the instant case, just as in *Sinnott*, that R.C. 2307.92 is not in place to penalize William as a nontraditional patient, who was properly diagnosed by competent medical authority personnel and has the medical records and other evidence to support his claim. *Id.* at ¶ 23. By submitting hospital records documenting William's diagnosis of lung cancer, history of smoking, and asbestos exposure, and reports from competent medical authority, Marilyn provided ample evidence demonstrating that William's occupational asbestos exposure was a substantial factor in causing his lung cancer. *Id.* at ¶ 19. *See also Hoover v. Norfolk S. Ry. Co.*, 8th Dist. Nos. 93479 and 93689, 2010-Ohio-2984, appeal not allowed by *Hoover v. Norfolk S. Ry. Co.*, 127 Ohio St.3d 1504, 2011-Ohio-19, 939 N.E.2d 1267 (where this

court reviewed the evidence in toto to determine if plaintiff established his prima-facie case. We stated that "based on our de novo review of the record that the medical records and reports [plaintiff] submitted * * * was sufficient to establish a causal link between [his] lung cancer and his asbestos exposure." *Id.* at ¶ 22.)

**{¶33}** H.B. 292 was enacted in order to alleviate the crisis in Ohio regarding the administration of claims for injuries alleged to have been caused by exposure to asbestos. *See* Am.Sub.H.B. 292, Section 3(B). However, there is no crisis in the matter before us. As the trial court noted "[o]ne would think this case was not part of the announced purpose of H.B. 292 as the cost and expense of discovery had been completed."

**{¶34}** Accordingly, we find that the trial court erred when it administratively dismissed Marilyn's complaint.

**{¶35}** Therefore, the sole assignment of error is sustained.

**{¶36}** Judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR